**Harry A. ESTES, Plaintiff,**

v.

**Adolphus N. SPENCE, II, et al., Defendants.**

**Civ. A. No. 1288-70.**

United States District Court, District of Columbia.

Jan. 14, 1972.

William B. Peer, Washington, D. C., for plaintiff; Bredhoff, Barr, Gottes-man, Cohen & Peer, Washington, D. C., of counsel.

Robert M. Werdig, Jr., Asst. U. S. Atty., U. S. Dist. Court, Washington, D. C., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

### FINDINGS OF FACT

PARKER, District Judge.

1. This is a suit by a losing candidate for promotion in the Government Printing Office (GPO) to set aside the promotion of the successful candidate, alleging that it was in violation of GPO and Civil Service Commission (CSC) regulations, the Administrative Procedure Act, and due process of law.

2. The plaintiff Harry A. Estes was at all relevant times the Assistant Foreman in the Letterpress Division at the defendant Government Printing Office.

3. The defendant GPO is an agency of the United States Government, existing and operating pursuant to 44 U.S.C.A. § 301 *et seq.*, and is the employer of plaintiff Estes. The defendant Adolphus N. Spence, II is the Public Printer, the chief administrative officer for the GPO. He is the successor-in-office to James L. Harrison who at all material times was the Public Printer. Defendants Robert E. Hampton, James E. Johnson, and L. J. Andolsek collectively constitute the defendant United States Civil Service Commission (CSC), with plenary power to administer the several federal civil service laws and regulations, including the federal merit promotion program, and with full authority to effect the relief requested herein.

4. On December 10, 1968 the then Public Printer Harrison confirmed the promotion of one Kenneth Peck as Assistant Superintendent of the Letterpress Division, effective January 12, 1969.

5. No notice of the vacancy was provided to the employees of the Division until after the promotion had been finalized, although management had known of the vacancy on November 22,

1968 (Exhibit D, GPO Hearing Transcript, p. 21) and the formal processing of the papers to fill the vacancy by the Division of Personnel began on November 26, 1968. And plaintiff had no opportunity to appear before the promotion panel, to augment his personnel file with useful and probative information on his current skills and qualifications, or to otherwise advance his own credentials.

6. Federal Personnel Manual and GPO promotion regulations effective at the time of Mr. Peck's promotion emphasize the importance of sufficient employee knowledge of job vacancies and promotion requirements and procedures. This is to insure adequate opportunities for eligible candidates to apply, provide accurate and up to date information on each candidate's qualifications, and foster employee confidence in the fairness of agency promotion programs. Federal Personnel Manual, Chapter 335, Subchapter 2, Section 2–2d (September 20, 1968); Subchapter 5, Section 5–2a(1) (September 20, 1968); and GPO Personnel Bulletin No. 65, Supplement No. 3, Revision No. 1 (October 26, 1960). Subsequent amendments to the Federal Personnel Manual strengthen those provisions. Chapter 335, Subchapter 3, Section 3–4b(1) and (2) and Section 3–4(c) (March 9, 1971).

7. The Superintendent of the Letterpress Division, Howard Amos, submitted to the Director of Personnel the names of ten candidates to be considered for the promotion. Mr. Amos also reviewed all evaluations made by candidates' supervisors prior to submission of the evaluations to the "promotion panel." One of these evaluations was by Mr. Fanning whose retirement precipitated the opportunity for promotion. Mr. Fanning indicated that Mr. Estes "would be a good supervisor." He also indicated that Mr. Peck "would be one of the best" as a supervisor.

8. Mr. Amos selected two members of the promotion panel—Mr. Leonard T. Golden, Superintendent of Composition, and Mr. Wallace L. Burton, Deputy Production Manager. The third member of the panel, appointed by the Director of Personnel of the GPO, was Arthur Mellor. However, GPO Personnel Bulletin No. 65, Supplement No. 3, Revision No. 1, October 26, 1960, provides, in pertinent part:

"I. *Evaluation Techniques*

A promotion Panel consisting of a staff member on the Division of Personnel and two members from within the Production Divisions or the Administrative Divisions designated by the Division Head will be utilized to determine the best qualified employees. One member of a Panel will rate employees for review by other Panel Members."

Mr. Amos did not have authority to appoint the panel. (GPO Hearing Transcript, p. 49.) It was Mr. Luther, the Production Manager's responsibility.

9. The promotion panel did not give plaintiff credit for certain military leadership and supervisory experience and commendations, all of which the plaintiff contends were relevant and material to his potential for effective performance in the position to be filled. (GPO Hearing Transcript, pp. 70–72.) But Civil Service Commission Handbook X–118, Part II, Section II, July 1967, provides in pertinent part:

"All valuable experience and training of the quality and type specified in the standard, including experience and training gained in religious, civic, welfare, service and organizational activities, is considered in determining qualifications regardless of whether or not any compensation was received. . . ."

And Appendix A to Part II of Civil Service Commission Handbook X–118, October 1961, provides, in pertinent part:

"Information about incentive awards and letters of commendation received should be available to the appointing officials."

See also Federal, Personnel Manual, Chapter 335, Subchapter 3, Section 3–6g (March 9, 1971).

10. The panel did not use written tests or other subjective measures to evaluate plaintiff and the other candidates; rather it used a non-numeric scoring system in the final ranking of plaintiff and the other candidates. GPO Personnel Bulletin No. 65, Supplement No. 3, Revision No. 1, October 26, 1960, provides in pertinent part:

"At the discretion of the Director of Personnel, written tests will also be given to assist in the evaluation of employees. Results of tests will be combined with ratings on the foregoing factors to form a composite rating. Personal interviews may also be used by the Promotion Panel if necessary to make a complete evaluation of employees."

And Civil Service Commission Handbook X–118, Part II, Section IV, March 1970 provides in pertinent part:

"The Commission does not normally *require* that an agency administer a written test in inservice placement actions if the agency can satisfactorily determine the employee's ability to do the job to be filled through some other means, such as from his previous employment background. . . ." (Emphasis in original.)

11. GPO did publish minimum promotion qualifications in GPO Personnel Bulletin No. 105, June 1, 1956, and GPO Personnel Bulletin No. 65, Supplement No. 3, Revision No. 1, October 26, 1960, Paragraph "H", and certain factors to be considered in evaluating employees and determining their standing on the promotion roster, GPO Personnel Bulletin No. 65, Supplement No. 3, Revision No. 1, October 26, 1960, Paragraph "I". However, the evaluation methods by which the promotion panel converted its numeric evaluations into non-numeric conclusory categories and rankings were not formally spelled out nor were they articulated until after the Estes promotion. (GPO Hearing Transcript, pp. 67–69.) The Federal Personnel Manual, Chapter 335, Subchapter 3, Section 3–8a, March 9, 1971 provides, in pertinent part:

". . . In recognition of the importance of supervisory positions and of their particular requirements, special and distinctive procedures must be established for identifying and evaluating persons with supervisory abilities and potential. The procedures must be based on supervisory qualification standards published by the Commission (See CSC Handbooks X–118 and X–118C) or on principles and methods equivalent to those outlined in the standards. . . ."

And Appendix A to Part II of Civil Service Commission Handbook X–118, provides, in pertinent part:

"In dealing with its own employees, however, the agency must recognize the existing employment relationship and the nature of the commitments between the employees and the agency. . . . The [evaluation for promotion] methods used help determine whether the employee will consider the organization fair or arbitrary in its treatment of employees."

12. The panel submitted the list of ten candidates, which included the names of Mr. Peck (second) and Mr. Estes (third), in ranking order to the Personnel Office. The Personnel Office unranked the names and submitted the top five in alphabetical order to Mr. Amos. The list of the top five included the names of Mr. Peck and Mr. Estes. However, GPO Personnel Bulletin No. 65, Supplement No. 3, Revision No. 1, Paragraph "I" provides, in pertinent part:

"The names of the highest five employees in ranking order will be submitted to the Division Head where the vacancy exists. . . ."

13. Mr. Amos selected Mr. Peck, although Mr. Luther, the Production Manager, was the appropriate selecting officer. (GPO Hearing Transcript, p. 81, cross-examination of Edward A. Blatt, Chief of the Employment Section in the Division of Personnel, GPO.)

14. Mr. Peck's promotion required skipping one intermediate employment level. (This was his second "jump" pro-

motion by Mr. Amos, according to Mr. Estes. GPO Hearing Transcript, p. 126.) But Civil Service Commission Handbook X–118, Part II, Section II, (April 1965, July 1967), provides in pertinent part:

> "Some qualification standards for administrative, professional and technical positions define specialized experience as experience in substantially the same line of work as the job to be filled. Such standards typically require that 1 year of this specialized experience must have been at a level of difficulty comparable to the next lower grade in the series. . . . *There are however, instances in which an individual's career has varied from the normal in sufficient degree that his background does not always fit this normal career pattern, although he is clearly well qualified for the job in question.* . . . (Emphasis added)
>
> .   .   .   .   .   .
>
> "*In interpreting the specialized experience requirements in noncompetitive actions, agencies are authorized to accept closely related experience in filling administrative, professional, or technical positions when the background of the individual demonstrates strong affirmative evidence that he:*
>
> a. *Possesses full journeyman knowledge or professional competence in the occupation in which the job is classified,*
> > *and*
>
> b. *Has necessary level of skills, knowledges, and abilities needed to do the work.*" (Emphasis in original.)

Mr. Peck had been an assistant foreman for nearly five (5) years.

15. The defendants disputed the plaintiff's claim that Mr. Peck was credited with experience obtained on "details" or "temporary promotions". (GPO Hearing Transcript, pp. 95–96.) In any event, such special assignments were in connection with the so-called "tax program" with which Mr. Peck already had the most experience—12 years. Thus, such assignments would have been logical.

16. Mr. Amos' selection of Mr. Peck was concurred in by the Assistant Production Manager, Mr. Burton, the Production Manager, Mr. Luther, and the Deputy Public Printer, Mr. Merold.

17. On December 10, 1968 the Public Printer confirmed the promotion effective January 12, 1969. On December 20, 1968 the plaintiff filed a written grievance in accordance with GPO Personnel Bulletin No. 52. A hearing officer was appointed to take testimony and evidence. A hearing was held on February 12, 1969 at which the plaintiff was represented by counsel. A verbatim transcript was prepared.

18. On March 10, 1969 plaintiff's counsel filed a motion with the Public Printer Harrison requesting:

(a) that the Hearing Officer be ordered and directed to prepare findings of fact and recommendations for adjudication for submission directly to the Public Printer;

(b) that the Director of Personnel not be permitted to prepare recommendations, on grounds that the testimony at the grievance hearing allegedly proved that the Director of Personnel was personally involved in the promotion matter and had already asserted a position in opposition to plaintiff, and that the Director of Personnel was not qualified to fairly, impartially and objectively prepare recommendations;

(c) and that the Public Printer himself make the final adjudication, rather than the Deputy Public Printer, a lower level employee. The Public Printer denied this motion on March 26, 1969.

19. On April 14, 1969 the Hearing Officer issued his Findings:

(a) No notice of vacancy was published—but none was required.

(b) No opportunity was afforded candidates to appear before the promotion panel to augment their personnel files or to otherwise advance their own credentials. Although this was normally not

required, it was where, as here, no notice of vacancy had been provided.

(c) While Mr. Amos' participation in the preparation of the supervisory evaluations was not per se illegal, it was improper in this instance because Amos' multiple roles were not surrounded by proper safeguards to assure the appearance as well as the substance of fairness. There is no evidence that Amos took unfair advantage of his multiple roles.

(d) The promotion panel was not legitimately established. Personnel Bulletin No. 65 was not followed; two of the panel appointees were improperly selected from outside the Division; and Mr. Luther, the Production Manager—not Mr. Amos—should have selected the panel.

(e) ". . . [T]he Government Printing Office did not substantially comply with Federal Personnel Manual sections requiring that employees be kept informed as to *qualification requirements, evaluation techniques,* and *ranking.*"

(f) "I found no specific violation" with respect to the claim that the panel failed to give Mr. Estes credit for leadership experience and supervisory experience to which he was allegedly entitled by law.

(g) There was no error in the panel's failure to use written tests for ranking purposes.

(h) The panel's use of a non-numeric rating system was not contrary to CSC requirements.

(i) The Panel was not incorrect in finding that Mr. Peck satisfied the qualification standards.

(j) As the defendants admit, the panel's selections were not forwarded to the selecting officer in ranking order as required.

(k) Mr. Luther, the Production Manager, did not, in fact, make the selection as required by Personnel Bulletin No. 65.

(l) "[The] . . . facts do not support the conclusion that Mr. Amos and the Panel reached two contrary opinions [on the relative ranking of the pertinent experience of Mr. Estes and of Mr. Peck] that cannot stand together."

(m) Mr. Amos did not erroneously credit Mr. Peck with experience received on special details. The details were with the "tax program" with which Mr. Peck had twelve years experience.

(n) The multiple roles of Mr. Luther and Mr. Burton were not in accordance with Personnel Bulletin No. 65. In summary the hearing officer found:

(a) "The GPO did not comply with certain CSC regulations applicable to promotion actions. The principle cause of this was the fact that the GPO's *Promotion Guidelines* and *Promotion Plans* were poorly worded and *out of date.*"

(b) "The GPO neglected to follow some of its own rules and guidelines in this promotion action. This was caused by the poorly worded *Plans* and *Guidelines.*"

(c) "The evidence does not support the allegation that personal bias or favoritism played a part in this promotion action."

(d) "The GPO's *Promotion Guidelines* and *Promotion Plans* did not provide the proper safeguards in this action. There is no assurance that the *nominating, rating, ranking,* and *selecting* processes achieved the results required by law. There is no assurance that any or all of the top ranked candidates qualified for that top ranking. Consequently, there is no assurance that Mr. Estes received fair and lawful treatment in this promotion action." The hearing examiner made no recommendations.

20. On April 25, 1969 Deputy Public Printer Merold denied plaintiff's Grievance.

21. On May 5, 1969 plaintiff appealed the denial of his grievance to the CSC. On June 18, 1969 he received a letter from the Director, Bureau of Recruiting and Examining, indicating, *inter alia,* that:

"There is no employee right to appeal to the Commission on promotion actions. However . . . we look into

promotion complaints when it is evident that a grievance has been filed with an agency but that the agency has failed to take action . . . [and] where there is a factual showing that a basic requirement of the plan or program has been violated. In this case our review shows that there were as admitted by the agency, violations of some provisions of the agency promotion procedures. While this is indeed unfortunate, our review does not show that Mr. Estes was thereby denied a promotion. Since Mr. Estes' name was among those from which the final selection was made, and he could have been selected, the procedural defects did not prevent Mr. Estes from receiving the consideration to which he was entitled. From available information we do not find any basic violation of a Civil Service regulation. We do not find any evidence that, if all procedures and instructions had been followed there *would* have been any different person selected. We, therefore see no useful purpose in taking further action in this case." (Emphasis added.)

22. Plaintiff directed a second letter of appeal to the CSC on June 19, 1969 but was again refused help on grounds that the matter was not within the appellate jurisdiction of the CSC.

23. On July 10, 1969 plaintiff appealed directly to CSC Chairman Hampton who essentially upheld the June 18 letter from the CSC. Mr. Hampton's reply made reference to "recently made [CSC] recommendations to correct what we regard as procedural deficiencies in the promotion program at the Government Printing Office."

24. Civil Service Commission Handbook X–118, Appendix A to Part II, October 1961, provides in pertinent part:

" . . . [A] basic principle [of Merit Promotion Program evaluation methods] is that qualifications standards and evaluation methods shall be (a) reasonable, (b) applied fairly and equitably, and (c) as reliable and valid as possible."

25. Plaintiff filed this suit for declaratory and injunctive relief on April 29, 1970. The plaintiff has moved for summary judgment, and the defendants have moved to dismiss the complaint on grounds of sovereign immunity, lack of subject matter jurisdiction, and failure to state a claim upon which relief may be granted.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this suit pursuant to 28 U.S.C. §§ 1361, 2201 and 2202, and 5 U.S.C. § 704.

2. Sovereign immunity does not bar this suit since it challenges actions of government officials as allegedly beyond their official powers. *See* Dugan, et al. v. Rank, et al., 372 U.S. 609, 622, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Larson v. Domestic & Foreign Corp., 337 U.S. 682, 701, 702, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

3. Judicial relief in a federal agency promotion action may be provided only where the agency's actions are not in substantial compliance with applicable laws and regulations, or otherwise arbitrary, capricious or illegal. Thomason v. Laird et al., 455 F.2d 1376 (D.C.Cir., decided December 27, 1971); Powell v. Brannan, 91 U.S.App.D.C. 16, 17, 196 F.2d 871, 873 (1952); Cohen v. McNamara, et al., 282 F.Supp. 308, 313 (E.D.Pa.1968); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).

4. The clear meaning and import of the cited provisions of the Federal Personnel Manual and GPO Personnel Bulletins is that *every* individual should be given an equal opportunity to apply and compete for a position if *he* feels himself qualified. To fully and adequately effectuate that goal timely notice is essential. The duty of supervisors to suggest applicants is merely to assure consideration for those employees who may not be themselves fully aware of their qualification or potential; it is not a sufficient substitute for timely notice.

Although the plaintiff Estes was included among the candidates, the lack of any notice or opportunity to augment his file may have diluted his ability to compete.

5. The decision not to provide a written test was within the discretion of the Personnel Department.

6. The appointment of the promotion panel by Mr. Amos was contrary to express GPO requirements.

7. The plaintiff was not adequately informed of the method of conversion of numerical scoring into broader non-numerical categories.

8. The promotion panel's failure to credit Mr. Estes with military leadership and supervisory experience was contrary to Civil Service Commission requirements and arbitrary and without rational basis.

9. The unranking of the finalists prior to submission of their names to the selecting officer was an express violation of GPO requirements.

■ 10. The multiple roles of Mr. Amos, Mr. Burton and Mr. Merold were contrary to the Civil Service Commission's emphasis on fairness and constitute a denial of due process.

11. Mr. Peck was qualified, in accordance with GPO and CSC requirements, for the position to which he was promoted.

12. Compliance with GPO and CSC requirements, and due process *could* have resulted in the selection of Mr. Estes for promotion rather than Mr. Peck.

13. Despite the defendants' failure to comply with GPO and CSC requirements, and due process, vacation of Mr. Peck's promotion is not warranted in view of his qualification for the job and the time he has served in his new position.

■ 14. Accordingly, the defendants' motion to dismiss the complaint should be denied, and the motion of the plaintiff for summary judgment should be granted to the extent consistent with these findings and conclusions.

WHEREFORE, it is, this 14th day of January, 1972, ORDERED that the motion of the defendants to dismiss the complaint be and is hereby denied;

further ORDERED that the motion of the plaintiff for summary judgment be and is hereby granted in part and denied in part;

further ORDERED that in accordance with the provisions of the Federal Personnel Manual, Chapter 335, Subchapter 6, Section 6–4c.(2), that the plaintiff Harry A. Estes be given priority consideration for the next appropriate vacancy before candidates under a new promotion or other placement action are considered, and that this consideration be considered an exception to any applicable competitive procedures; and

it is further ORDERED that the following individuals, and any others who had a direct part in the disputed promotion or review not take part in any future promotion proceeding of the plaintiff Estes:

Howard W. Amos, Superintendent of the Letterpress Division

Leonard T. Golden, member of the promotion panel

Wallace L. Burton, Deputy Production Manager and member of the promotion panel

Arthur Mellor, member of the promotion panel

——— Luther, Production Manager

Harry D. Merold, Deputy Public Printer

Mary Apostolou, Placement Specialist

Kenneth E. Peck