John Martin CRAIG, Plaintiff,

v.

Wayne B. COLBURN, Director, United States Marshals Service, Defendant.

No. 74–135–C5.

United States District Court, D. Kansas.

March 9, 1976.

Charles D. McAtee, Topeka, Kan., for plaintiff.

Richard L. Meyer, Asst. U. S. Atty., Topeka, Kan., Frank E. Schimaneck, Gen. Counsel, Gerald M. Auerbach, Associate Legal Counsel, U. S. Marshals Service, Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROGERS, District Judge.

### FINDINGS OF FACT

1. When this action was filed, John Martin Craig was the Chief Deputy United States Marshal for the District of Kansas having held that position since July 1, 1954. Subsequent to Craig's appointment as Chief Deputy United States Marshal for the Federal District of Kansas in 1954, his position was converted to the Classified Civil Service in 1966 or 1967.

2. Since his appointment as Chief Deputy United States Marshal for the Federal District of Kansas, John Martin Craig has

never signed a Mobility Statement, Consent to Transfer, Consent to Reassignment, or any other form which indicated he would be willing to accept reassignment outside the Federal District of Kansas without his consent.

3. Prior to 1969, the United States Marshals Service had maintained an informal, self-limiting, internal policy that Deputy and Chief Deputy United States Marshals would not be reassigned except upon their own request or with the consent of the person being reassigned.

4. Subsequent to 1969, the policy was in a state of change due to the increasing independence of the United States Marshals Service with the related need for more centralized control over its agents, due to added duties and responsibilities.

5. On May 12, 1969, the old Executive Office for United States Marshals was abolished and succeeded by the Office of the Director, United States Marshals Service, and placed under the administrative supervision of the Deputy Attorney General. Thereafter, the Office of the Director, United States Marshals Service, undertook to actively compete for a greater role in the Federal law enforcement field and to develop programs whereby the central headquarters in Washington, D. C., could exercise and exert a more centrist role over the largely theretofore autonomous field offices of the United States Marshals in the areas of administration and operation, as well as fiscal and personnel policies. (See remarks of Deputy Attorney General, Ralph E. Erickson, and remarks of Director Wayne B. Colburn, USMS, United States Marshals Service Newsletter, Vol. 25, September, 1972, pgs. 4–12.)

6. On May 17, 1973, the Director of the United States Marshals Service had the authority to take final action, subject to review, in matters pertaining to the employment, direction, and general administration including, *inter alia,* assignments. *See* 28 C.F.R. § 0.138 (July 10, 1973). The statement of such powers is now separately stated in 28 C.F.R. § 0.138a (May 6, 1974)

7. On June 29, 1973, all United States Marshals Offices were informed by Acting Director W. E. Hall that "all policies, practices, and procedures in effect at the time the Marshals Service attained bureau status will remain in effect until specifically suspended by appropriate directives issued through the Marshals Manual System. (See teletype dated June 29, 1973, from Acting Director W. E. Hall to all United States Marshals.)

8. Pursuant to Civil Service Regulations, agency heads are granted the general authority to "promote, demote, or reassign a career or career-conditional employee or an employee serving under career executive assignment." (5 C.F.R., § 335.102[a] (1975) [effective Aug. 18, 1970])

9. "Reassignment" means the change of an employee, while serving continuously within the same agency, from one position to another without promotion or demotion. (5 C.F.R., § 210.102[12] (1975) [effective Aug. 22, 1973])

10. "Transfer" means the change of an employee, without a break in service of 1 full workday, from a position in one agency to a position in another agency. (5 C.F.R., § 210.102[18] (1975) [effective date Aug. 22, 1973])

11. In April, 1972, the Defendant Director indicated his dissatisfaction with the traditional method of filling vacancies in the position of Chief Deputy United States Marshal noting the less than desirable response to a Merit Promotion Announcement for three such positions. The defendant Director, in a communication addressed to the field, indicated that he hoped that the situation would soon change inasmuch as the U. S. Marshals Service was implementing a "Career Assignment Program" which radically altered the method for selecting Chief Deputies. This program was indicated to be "basically" a program designed to identify future key managers of the Marshals Service and one which would "involve selection of Deputies who have high potential for career advancement." Once selected, the Deputies would be placed in a development program consisting of assignments

in several different field positions and headquarter staff positions. . . . " It was indicated that this program ultimately depended upon personal mobility and that the greater the willingness of a deputy to relocate, the more successful the program would be. It was indicated that through increased mobility, the Career Assignment Program would provide participants with broad background and experience, stimulate new ideas and techniques throughout the Service, and enhance the opportunity for rapid promotion. It was further noted that apparently many deputies were content to remain in their present Districts and wait their "turn" to advance up the ladder. It was indicated that this attitude must change simply because, in the future, it would be "rare for a chief deputy to be selected from within his own district." (United States Marshals Service Newsletter, Vol. 20, dated April, 1972)

12. On November 15, 1972, Section 222, Chapter 200, U. S. Marshals Manual, entitled "Career Mobility Program," was adopted as effective and subsequently disseminated to the field for inclusion in the United States Marshals Manual. (See Defendant's Answers to Interrogatories numbered 28 through 35.)

■ 13. Although a frequently utilized procedure, the submission of major personnel policies to the field for comment and review is a matter of courtesy to the field and is not binding on the United States Marshals Service and on many occasions involving policy changes, no such practice was followed.

14. Section 222, "Career Mobility Program," Chapter 200, U. S. Marshals Manual, was not disseminated to the field for "review and comment." (See Defendant's Answer to Interrogatory No. 28[c][1] *and see* U. S. Marshals Service Newsletter, Vol. 25, dated September, 1972.)

15. Section 222, Chapter 200, USMM, entitled "Career Mobility Program," along with other provisions, offers to employees the maximum opportunity to transfer laterally within the Service at their own expense. Only Paragraph 2 of Section 222,

USMM, states that "vacant positions not covered under Section 213 will be announced service-wide prior to being filled under Section 210 and 212." (Section 222, USMM, paragraph 2.)

16. Section 213, USMM, effective November 15, 1972, is the Merit Promotion Plan and incorporates by reference Department of Justice Order 1335.2A, effective July 26, 1972. (Section 213, USMM.)

17. Section 222, Career Mobility Program, U. S. Marshals Manual, paragraph 4, states:

"When the Service requests the transfer of an employee for career mobility or as work load fluctuations require, expenses incurred in the transfer will be reimbursed in accordance with applicable Department of Justice Orders."

■ 18. There is ample authority under Section 222, Career Mobility Program, U. S. Marshals Manual, read in conjunction with the legal authority granted the Director by 28 C.F.R. § 0.138 (July 10, 1973) to provide for the involuntary reassignment of Chief Deputy United States Marshals of long-standing employment who were either at or near the top of their career ladder.

■ 19. "Career mobility" as outlined by the Defendant Director in the United States Marshals Service Newsletter, Vol. 20, April, 1972, and as implemented under the new nationwide class recruiting concept in Section 210, USMM, provides the Director, United States Marshals Service, with a greater degree of flexibility in personnel matters than has heretofore existed in the Headquarters, United States Marshals Service, and is a reasonable and justifiable management tool for developing future top level supervisory personnel.

20. On April 2, 1974, the defendant, Director of the United States Marshals Service, caused a teletype to issue announcing and ordering the career reassignments of several Chief Deputy United States Marshals, including *inter alia,* the plaintiff, John M. Craig, pursuant to the Marshals Service's program policy of career mobility.

21. Plaintiff Craig was ordered reassigned from his position as Chief Deputy United States Marshal for the District of Kansas, GS–12, to the position of Chief Deputy United States Marshal for the Eastern District of Michigan, GS–12.

22. The reassignment of CDUSM Craig from the Federal District of Kansas to the Eastern District of Michigan was neither a promotion nor a demotion. The rank, grade level, job description, employment security, and fringe benefits of this position of Chief Deputy United States Marshal, Eastern District of Michigan, are identical to those of the position of Chief Deputy United States Marshal, District of Kansas. (Paragraph 11, Defendant's Affidavit, dated August 14, 1974)

23. The Office of United States Marshal for the Eastern District of Michigan is a larger office, personnel-wise, and a busier office, caseload-wise, than its counterpart in the District of Kansas. The Chief Deputy United States Marshal for the Eastern District of Michigan has to supervise more United States Marshals Service personnel in handling a heavier caseload than the Chief Deputy United States Marshal for the District of Kansas. As such, the Chief Deputy United States Marshal for the Eastern District of Michigan is in a position of greater responsibility than the Chief Deputy United States Marshal for the District of Kansas. (Paragraph 12, Defendant's Affidavit dated August 14, 1974; Defendant's Answer to Interrogatory No. 16[a], [b], [c], and [d].)

24. A "career mobility program" designed to provide an opportunity for employees to develop and advance in accordance with their capabilities and interests and designed to assure a continued supply of experienced and tested people for the middle and higher level positions in an agency is both authorized and desirable. It was intended to function as an "elective" program but the historical functioning of the service revealed the need for a "directive" aspect of the program. (Chapter 250, Federal Personnel Manual, subchapter 2, section 2–2[b][1] and [2]!)

25. The Defendant Director had never attempted to utilize the concept of "career mobility" to effectuate the directed reassignment of any employees until the directive dated April 2, 1974, which included the directed reassignment of the Plaintiff from the Federal District of Kansas to the Eastern District of Michigan. However, involuntary assignments of Chief Deputy United States Marshals had been made by the Director under his statutory authority [See 28 C.F.R. § 0.138 (July 10, 1973)], prior to the assignment of Chief Deputy Craig. (See Defendant's Answer to Interrogatory No. 27.)

26. The day before the teletype was dispatched, the United States Marshal for the District of Kansas, Jack V. Richardson, was telephonically informed by Mr. Frank C. Sidella, Chief, Personnel Management and Training Division, United States Marshals Service of plaintiff's reassignment and the reasons therefor. At that time, Mr. Sidella informed Marshal Richardson that a teletype ordering plaintiff's reassignment was going to be dispatched the following morning and requested Marshal Richardson to instruct his teletype operator to deliver said teletype to the Marshal personally for confidential transmission to plaintiff. Thereafter, plaintiff personally spoke to Mr. Sidella by telephone, at which time Mr. Sidella repeated the message he had previously given Marshal Richardson.

27. Plaintiff wrote to defendant Colburn on April 3, 1974, concerning his reassignment although the memorandum was mistakenly dated March 3, 1974.

28. Mr. Sidella responded on behalf of defendant by letter dated April 16, 1974, reaffirming the reassignment, finding no adequate justification for plaintiff declining the reassignment, setting June 3, 1974, as the effective date of reassignment, and noting that failure to report to his reassigned duty station without official leave would cause plaintiff to be placed in AWOL status and failure to accept reassignment would be grounds for removal.

29. Subsequent to receiving Mr. Sidella's letter, plaintiff again telephoned Mr. Sidel-

la at which time Mr. Sidella again reaffirmed the reassignment and re-explained the underlying reasons therefor.

30. By memorandum to defendant Colburn dated May 17, 1974, at plaintiff's written request, Marshal Richardson requested an extension of plaintiff's reporting date to the Eastern District of Michigan from June 3, 1974, to July 1, 1974. By memorandum dated May 22, 1974, from Mr. Sidella to Marshal Richardson, the request was granted.

31. Prior to the reassignment order, plaintiff was notified by memorandum dated March 19, 1974, from Marshal Richardson of a proposed letter of reprimand for violation of 28 C.F.R. 45.735–2(C)(1) and (4), that is, engaging in conduct which could create the appearance of using public office for private gain and losing complete independence and impartiality, in connection with an incident involving plaintiff and a protected government witness. Plaintiff responded to the proposal by memorandum to Marshal Richardson dated April 25, 1974. By memorandum dated May 17, 1974, Marshal Richardson rescinded the proposed letter of reprimand based on the information contained in plaintiff's reply.

32. On June 28, 1974, plaintiff brought the present action in this Court praying for declaratory, mandamus, and injunctive relief. Plaintiff reported for duty in the United States Marshals Office in the Eastern District of Michigan on July 1, 1974, and is presently serving in that position. Plaintiff's relocation expenses were fully paid by the Marshals Service.

33. This reassignment was ordered pursuant to the Marshals Service's career mobility policy as discussed in *United States Marshals Manual* Section 222 (Nov. 15, 1972), as indirectly authorized by 28 C.F.R. § 0.138 (July 10, 1973). The concept of career mobility recognizes that increased experience and varied exposure to different settings and problems helps prepare individuals for increased responsibility and tends to promote the efficiency of not only the Service but also the individual employee. Similarly, employees not able to realize their full potential in their present work environment, if provided with a new opportunity, may flourish in another setting. The career mobility program is the managerial tool implementing these concepts.

34. The reassignment of Chief Deputy Craig was not in lieu of discipline and was not in any way motivated by a punitive intent. The proposed discipline against plaintiff was a letter of reprimand, the least severe of formal Marshals Service disciplinary measures. It could not have resulted in suspension or removal. Based on the information supplied in plaintiff's reply to the proposal, the charges were dropped and the letter of reprimand never issued. Plaintiff had not previously been the subject of any Marshals Service disciplinary procedures.

35. Plaintiff was and is considered to be a conscientious, diligent, and dedicated employee who has fully mastered the intricate skills of the Chief Deputy United States Marshal position, which include the maintenance of detailed accounts and the management of all field and clerical personnel in the district. This fact and this fact alone impelled management to reassign plaintiff to what is considered a difficult and demanding position, that is, the Chief Deputy position in the Eastern District of Michigan. Furthermore, at plaintiff's behest, the effective date of his reassignment was gratuitously extended by Mr. Sidella for an additional month.

36. Plaintiff entered the Marshals Service as a Chief Deputy. He has continued in that administrative capacity throughout his tenure with the Marshals Service. Plaintiff's extensive training has been entirely in the administrative field, a rarity in a Service in which operational training must necessarily predominate. Therefore, plaintiff was laterally transferred to the Eastern District of Michigan Office to provide the administrative supervision that was needed there for the good of the entire United States Marshals Service.

37. Plaintiff is considered by management to be a conscientious, dedicated, and

hardworking employee of the United States Marshals Service who has shown steady and commendable improvement in mastering the intricate managerial skills required of the position of Chief Deputy United States Marshal. Through this reassignment, plaintiff is being given the opportunity to further improve and refine his abilities in a busier, more demanding district. In so doing, the United States Marshals Service is providing the Service and the courts with more effective employees.

38. When Mr. Paskal Bowser, the former Chief Deputy United States Marshal for the Eastern District of Michigan, was needed in the national headquarters to fill a key administrative position, a significant personnel gap existed in the Eastern District of Michigan office. United States Marshal Anthony Rozman of the Eastern District of Michigan is a highly competent police scientist but lacks expertise in accounts and personnel administration. Marshal Rozman was in need of a highly competent administrative man to fill his Chief Deputy position.

39. Plaintiff gained valuable experience over many years in the administrative field and plaintiff was deemed by management to be the best man available in the Service to fill this position. Plaintiff has long been considered one of the best "paper men" in the United States Marshals Service and management concluded that he would bring a much needed dimension to the Eastern District of Michigan Office.

40. The reassignment was based on genuine operational needs in management's best judgment and was not intended or motivated as punishment or to coerce plaintiff's resignation. Plaintiff has adjusted well to his new position and his work-product is assessed as outstanding by his new supervisor.

41. Plaintiff is effectively providing the sorely needed administrative abilities in the Eastern District of Michigan Office. Marshal Rozman stated that plaintiff's talents are being most effectively utilized in his new position and that plaintiff is doing an outstanding job. The reassignment was based on sound management objectives and genuine operational needs in management's best judgment and was in the best interests of the Marshals Service.

42. Plaintiff had the burden to prove that the reassignment was, as he claims, discriminatory and punitive in nature, that the Director was not authorized by law to make the reassignment or that the Director was estopped by prior long-standing policies of the Service mandating against such action. The plaintiff did not meet the necessary burden of proof.

43. Each Finding of Fact set forth in the foregoing Findings of Fact deemed to be a Conclusion of Law is hereby found to be a Conclusion of Law.

## CONCLUSIONS OF LAW

### I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Ordinarily, in a case where the plaintiff seeks the relief prayed for by John Martin Craig, a federal district court is without subject matter jurisdiction if the plaintiff failed in the first instance to pursue available administrative grievance procedures pursuant to 5 C.F.R. § 771, *et seq.* Judicial review is therefore delayed until all available and viable administrative remedies are exhausted. Both informal and formal grievance procedures are available and the reassignment described herein would be a proper subject for such a grievance. 5 C.F.R. § 771.108. However, based upon the order of the Honorable George Templar, Senior Judge, Assigned, dated February 4, 1975, denying defendant's motion to dismiss and for summary judgment, the Court adopts the finding contained therein that the record in the case discloses the futility of pursuing an administrative remedy, if in fact, any such remedy existed and the further finding that plaintiff's efforts to gain any consideration for relief from any quarter were all summarily rebuffed and that further efforts would have been to no avail. In addition, the requirement of exhaustion of administrative remedies is a matter within the sound discretion of the Court. *N.L.*

*R.B. v. Industrial Union of Marine and Shipbuilding Workers of America*, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968).

## II. JURISDICTION

■ The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 does not confer jurisdiction upon federal courts in the absence of an independent basis of jurisdiction. *Schilling v. Rogers*, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960); *Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

■ The Mandamus Act, 28 U.S.C. § 1361, does not create new liabilities or new causes of action against the United States Government nor does it give access to federal courts for actions which could not have been brought against a federal official prior to its enactment. *Seebach v. Cullen*, 224 F.Supp. 15, 17 (N.D.Calif.1963), aff'd 338 F.2d 633 (9th Cir.), *cert. denied*, 380 U.S. 972, 85 S.Ct. 1331, 14 L.Ed.2d 268 (1965) (citing Senate Report No. 1992, 2 U.S.Code Cong. & Admin.News, pp. 2784–2787 87th Cong., 2d Sess.( 1962)). 28 U.S.C. § 1361 merely broadens the venue in which actions against a United States officer can be properly brought. It does not waive the sovereign immunity of the United States in mandamus actions. It does not confer an independent basis of jurisdiction but rather merely supplies a permissible remedy in actions otherwise properly brought on independent jurisdictional grounds. *See Udall v. Oil Shale Corp.*, 406 F.2d 759 (10th Cir. 1969); *Prairie Band of Pottawatomie Tribe of Indians v. Udall*, 355 F.2d 364 (10th Cir. 1966), *cert. denied*, 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67; *Smith v. United States*, 224 F.Supp. 402 (D.Wyo.1963), aff'd, 333 F.2d 70 (10th Cir. 1964); *International Fed. of P. & T. Eng., Loc. No. 1 v. Williams*, 389 F.Supp. 287, 290 (E.D.Va.1974). Mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases. Furthermore, jurisdiction under 28 U.S.C. § 1361 is proper only to command an official to perform a ministerial act. An act is ministerial only if it is a positive command and so plainly prescribed

as to be free from doubt. Mandamus may not be used to direct the exercise of a judgment or discretion in a particular way. *International Fed. of P. & T. Eng., Loc. No. 1*, 389 F.Supp. 287, 290 (E.D.Va.1974).

■ However, the court finds that it has authority under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, to review the reassignment of John Martin Craig based upon the finding of the Honorable George Templar. 5 U.S.C. § 702 states that a person suffering legal wrong because of agency action is entitled to judicial review thereof. In *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), the Supreme Court indicated that only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review. 5 U.S.C. § 704 states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." In light of Judge Templar's finding it would be highly inequitable to state on the one hand that exhaustion of administrative remedies would be futile and then to deny the aggrieved party standing to subject the agency action complained of to review. See *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Thus the Court concludes that it has jurisdiction through the exercise of its equitable powers in this case to review the agency action under the standards enunciated in 5 U.S.C. § 706. See *Benson v. United States*, 421 F.2d 515 (9th Cir.), *cert. denied*, 398 U.S. 943, 90 S.Ct. 1861, 26 L.Ed.2d 279 (1970); *Vigil v. Post Office Department*, 406 F.2d 921 (10th Cir. 1969); *O'Leary v. Macy*, 111 U.S.App.D.C. 357, 297 F.2d 434 (1961), *cert. denied*, 370 U.S. 953, 82 S.Ct. 1603, 8 L.Ed.2d 819 (1962). The scope of review must be consistent with the need for agencies to maintain wide discretion in their internal operations to ensure the effective functioning of the agency provided such operations do not encroach upon the constitutional and statutory rights of their employees. No one in government could ever be reassigned if the measure of

lawfulness of the action was whether the employee was subjectively satisfied. *Comberiate v. United States*, 203 Ct.Cl. 285 (1973).

## III. INVOLUNTARY REASSIGNMENTS

Pursuant to his authority under 5 U.S.C. §§ 301, 302 and 28 U.S.C. §§ 509, 510, the Attorney General has delegated to the Director, United States Marshals Service the authority vested in the Attorney General by law to take final action in matters pertaining to the employment, direction, and general administration (including appointment, assignment, training, promotion, demotion, compensation, leave, classification, and separation) of personnel within his respective jurisdiction. 28 C.F.R. § 0.138 (July 10, 1973). This regulation was in effect on April 2, 1974. It delegates correlative authority to the Directors of the Bureau of Prisons, Drug Enforcement Administration, and other bureaus of the Department of Justice. Effective May 6, 1974, the regulation was restructured so as to provide this delegation separately to the Director, United States Marshals Service, 28 C.F.R. § 0.138a (May 6, 1974).

■ The authority to promote, demote, or reassign civil service personnel is incident to the authority to appoint and assign. 5 U.S.C. § 3301, *et seq.* The case law clearly establishes that an agency may reassign an employee to any place at any time for the good of the Service. *Handler v. Secretary of Labor*, 126 U.S.App.D.C. 311, 379 F.2d 88 (1967); *cf. Gnotta v. United States*, 415 F.2d 1271 (8th Cir. 1969), *cert. denied* 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970). Specifically, 5 C.F.R. § 335.102(a) (Jan. 1, 1974) states that "an agency may promote, demote, or reassign a career or career-conditional employee." *See also* Federal Personnel Manual, Chapter 335, § 1–2(a)1. The Attorney General has duly delegated his authority in this regard, with respect to Marshals Service personnel, to defendant, Director, United States Marshals Service, and defendant's reassignment order of April 2, 1974, was issued pursuant to that authority. 28 C.F.R. § 0.138, *supra*.

*United States Marshals Manual* Section 222 clearly indicates that the policy is implemented either by voluntary (Paragraph 2) or involuntary (Paragraph 4) reassignment. A voluntary reassignment is one requested and initiated by the employee, an involuntary reassignment is one requested and initiated by management. An employee must accept a bona fide management request for reassignment. In that sense, any management initiated reassignment is in involuntary reassignment notwithstanding whether the reassignee is satisfied or dissatisfied with the reassignment. Notably, the authority for the involuntary reassignment is derived from 5 C.F.R. § 335.102 and 28 C.F.R. § 0.138, not from *United States Marshals Manual* Section 222. Section 222 amplifies the career mobility policy and serves as an explanation of a Marshals Service policy. In the context of Section 222, Paragraph 4, "requests" is tantamount to directs or orders. Further, there is no self-limiting language in Section 222 which precludes the Marshals Service from ordering reassignments or restricts the Marshals Service from reassigning employees without their consent.

■ The authority vested in the defendant Director, United States Marshals Service to assign and reassign, *supra*, clearly extends to ordered or involuntary reassignments. This conclusion is compelled by the established principle that an agency may effect the removal of an employee for failure to accept reassignment when the agency has determined that the reassignment would serve the best interests of the agency. Therefore, the directed reassignment of plaintiff pursuant to the career mobility program was within defendant's legally authorized and duly delegated authority.

■ In his April 16, 1974, letter to plaintiff, Mr. Sidella noted that plaintiff's failure to report for duty to his reassigned location without official leave would cause plaintiff to be placed in AWOL status. This is quite in accordance with standard administrative procedures. Department of

Justice Order 1630.1, Section 5(c)1, at 19 (Mar. 7, 1963). *See also* 5 U.S.C. § 6311; Federal Personnel Manual, Chapter 630, 1–6 (Dec. 11, 1967). The letter concluded by noting that refusal to accept reassignment is valid grounds for removal from government service. This statement is fully supported by the case law. *Pauley v. United States*, 419 F.2d 1061 (7th Cir. 1969); *Burton v. United States*, 404 F.2d 365, 186 Ct.Cl. 172 (1968); *Handler v. Secretary of Labor*, 126 U.S.App.D.C. 311, 379 F.2d 88 (1967). The letter was not a threat nor was it in any way intended to intimidate plaintiff. It was merely an advisement to plaintiff of the applicable regulations surrounding his reassignment and his asserted desire to decline the reassignment. The letter was written after Mr. Sidella had telephonically informed both Marshal Richardson and plaintiff of the reasons for the reassignment. Notably, the letter was in response to plaintiff's letter of April 3, 1974 to defendant rather than on management's initiative.

■ The directed reassignment of plaintiff did not constitute an "adverse action" as a "removal, suspension, for more than 30 days, furlough without pay, or reduction in rank or pay." Civil Service Commission regulations similarly define the term. 5 C.F.R. § 752.201(b). Therefore, a reassignment is not an "adverse action" within the literal meaning of 5 U.S.C. § 7511. *Scarpa v. Smith*, 294 F.Supp. 13, 14 (S.D.N.Y.1968). In *Scarpa, supra*, the Court cited Federal Personnel Manual, Chapter 335, 1–5(b) (Sept. 20, 1968) in concluding that reassignments "are not subject to the adverse action requirements". Furthermore, Federal Personnel Manual Supplement 752–1, S1–4(c)13 (Feb. 4, 1972) indicates that reassignments are not "adverse actions" covered by the statute unless they are tantamount to reductions in rank. Plaintiff has repeatedly stated that his reassignment did not constitute a reduction in rank. Moreover, Federal Personnel Manual Supplement 752–1, S1–4(c)13, *supra*, expressly states that reassignments to less desirable or convenient surroundings with respect to work location

do not constitute "adverse action" within the meaning of 5 U.S.C. § 7511.

■ Pursuant to *United States Marshals Manual* Section 222, the Marshals Service is not required, prior to filling vacant positions pursuant to the career mobility policy, to announce the position servicewide. *United States Marshals Manual* Section 222, Paragraph 2. It is clear from a complete reading of Section 222 that Paragraph 2 is only applicable to *voluntary or employee requested career mobility* reassignments. This is evidenced by the fact that the lateral reassignments referred to therein are specifically at the reassignee's own expense. Paragraph 4 of Section 222 applies to involuntary or directed career mobility reassignments and does not contain a service-wide announcement provision.

■ Even though plaintiff never signed a Mobility Statement, which has been required of all new recruits since the inception of the Class Recruiting Program in 1972, he could properly be involuntarily reassigned. Plaintiff has overestimated the legal significance of the Mobility Statement. The Mobility Statement was first implemented in 1972 when the Marshals Service adopted a Nationwide Class Recruiting Program. *United States Marshals Manual* Section 210, Paragraph 6(b)5. It is contained in the Employment Agreement which new recruits have been required to sign since 1972. The Mobility Statement is intended solely as a formal notification to new recruits that by law they are subject to involuntary or directed reassignment for the good of the Service. It merely provides unequivocal notice to new employees that pursuant to the authority vested in the Director of the Marshals Service, they can properly be involuntarily reassigned. Importantly, the Marshals Service's authority to involuntarily reassign new employees does *not* derive from the Mobility Statement but rather emanates from 28 C.F.R. § 0.138 (July 10, 1973). Significantly, even if an equivalent form was offered to plaintiff for signature and he refused to sign, the Marshals Service would not be preclud-

ed by that from effectuating his reassignment.

Prior to the implementation of the Career Mobility Program, the Marshals Service was not required to solicit comments from the field, although in fact the Marshals Service did expend considerable efforts to make its employees aware of the Career Mobility Program prior to its implementation. Moreover, there is no requirement by law that an agency promulgate a regulation or directive prior to effecting a personnel policy which the agency is authorized by statute and regulation to implement.

Ordered reassignments were not possible prior to 1967, when Chief Deputies became career civil servants. Prior to 1970 when Director Colburn began developing the Career Mobility Program, the Marshals Service had no policy regarding involuntary reassignments since because of the excepted status of Marshals Service personnel during that time, reassignments could only occur if all parties consented. However, during 1970 and thereafter the concept of ordered reassignments was implemented and publicized to the field. Consequently, there has never been an affirmative policy in the Marshals Service not to reassign without their consent. To the contrary, the only affirmative Marshals Service personnel policy in this regard has been formulated since 1970 and specifically concerns involuntary or requested reassignments. *Cf. Burton v. United States*, 404 F.2d 365, 186 Ct.Cl. 172 (1968).

 The reassigned position in Detroit was not one of "known promotion potential" and therefore did not have to be submitted to competitive selection procedures prior to being filled. Federal Personnel Manual, Chapter 335 (hereinafter referred to as "FPM"); 5 C.F.R. 335.103; Department of Justice Order 1335.2A (July 26, 1972); *United States Marshals Manual* Section 213. It is clear that competitive selection procedures were not required for the instant lateral reassignment where plaintiff, a GS–12 Chief Deputy, was reassigned to another GS–12 Chief Deputy position.

The pertinent regulation, FPM Chapter 335, Subchapter 4, Section 4–1(c)(1) provides, "Competitive promotion procedures apply to filling a position with known promotion potential by reassignment, transfer or reinstatement . . . ." "Known promotion potential" is defined in the following section, 4–1(c)(2):

*Positions with known promotion potential are those from which career promotions are authorized, as discussed in section 4– 2b.* They include (a) career-ladder positions; (b) apprentice positions; (c) trainee positions; (d) understudy positions; and (3) positions filled at a grade below the established or anticipated grade. (emphasis supplied).

Under these regulations, plaintiff had to establish that the Eastern District of Michigan position was encompassed in one of the five categories described in Section 4–2(b). The necessary proof was not provided and the evidence was to the contrary.

 The theory behind the merit promotion procedure is that competitive selection procedures should not be required when an agency laterally transfers an employee between two positions that are identical. Such flexibility is necessary if the federal service is not to be paralyzed by rigid rules governing every personnel action. Since the Marshals Service's interpretation of the pertinent regulations in connection with the instant reassignment, as described above, is certainly a reasonable administrative construction of the regulations, it is entitled to be given great weight by the Court. *Ehlert v. United States*, 402 U.S. 99, 105, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625, 631 (1971); *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625–26 (1965); *Power Reactor Development Co. v. Electrical Union*, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924, 932 (1961); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, 1702 (1945). *See also Brennan v. Southern Contractors Service*, 492 F.2d 498 (5th Cir. 1974).

 The Court has carefully reviewed the actions of the agency in light of the

scope of review mandated by 5 U.S.C. § 706(2) and other pertinent statutes and regulations and after a full hearing and trial of the matter, does not find the reassignment of the plaintiff to be

(A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege or immunity;

(C) in excess of statutory jurisdiction, authority or limitations, or short of statutory right;

(D) without observance of procedure required by law

■ In the alternative, the Court finds that even if the reassignment of John Martin Craig was in excess of the Director's authority the Court could not return the plaintiff to his former position without encroaching upon valid rights and entitlements of other Service employees. *See Estes v. Spence,* 338 F.Supp. 319 (D.D.C. 1972). The prayer for relief by plaintiff is directed solely toward regaining his former position as the Chief Deputy for the United States District of Kansas. Such relief would place upon the Court the responsibility of determining that, after the hiatus since the reassignment was completed, it would now be for the good of the Service to assign John Martin Craig back to the United States District of Kansas. Assuming the Court's finding that the Director of the United States Marshals Service lacked the authority to direct the involuntary reassignment of John Martin Craig, the ultimate the Court could do is to direct that John Martin Craig be reassigned to this district when the first vacancy arises. Having found that the requisite authority existed to direct the reassignment, no such order is necessary.

The Court submits the following as a summary of its

## CONCLUSIONS OF LAW

(1) Plaintiff, John Martin Craig, was not required and shall not be required to exhaust his administrative remedies, if such remedies exist, because such exhaustion would be futile.

(2) The Court has jurisdiction to review the involuntary reassignment of John Martin Craig under 5 U.S.C. § 701 *et seq.*

(3) The Director of the United States Marshals Service had the authority to reassign John Martin Craig under 28 C.F.R. § 0.138 (July 10, 1973), and as an agency head, under 5 C.F.R. § 335.102(a) (1975) (effective Aug. 18, 1970).

(4) The reassignment was not an adverse action, either directly or indirectly, as defined by 5 U.S.C. § 7511.

(5) None of the standards enunciated by 5 U.S.C. § 706, which would allow the Court to set aside the reassignment, were established by the plaintiff.

(6) The position as Chief Deputy Marshal for the Eastern District of Michigan was not one of "known promotion potential" and therefore, the position was not necessarily subject to competitive selection procedures.

(7) In the alternative the Court finds that even if the reassignment would be found to be invalid, the Court could not return the plaintiff to his former position without encroaching upon valid rights and entitlements of other employees.

(8) Each Conclusion of Law set forth in the foregoing Conclusions of Law deemed to be a Finding of Fact is hereby found to be a Finding of Fact.

Accordingly,

IT IS ORDERED AND DECLARED that the involuntary reassignment of John Martin Craig was and is proper in all respects and, therefore all relief sought in this action must be, and is hereby, DENIED;

IT IS FURTHER ORDERED that due to the nature of the action, the uncertainty existing as to the Director's authority concerning involuntary reassignments at the time this action was filed, and the general complexity of the legal and factual situation involved herein, the costs of this action

be, and are hereby, assessed to the defendant in his official capacity.

IT IS SO ORDERED