**James F. SEXTON, Plaintiff-Appellant,**

**v.**

**David M. KENNEDY, Secretary of the Treasury, et al., Defendants-Appellees.**

**No. 74–2377.**

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1975.

Decided Oct. 2, 1975.

James F. Sexton, Cleveland, Ohio, for plaintiff-appellant.

Frederick M. Coleman, U. S. Atty., J. A. Cipollone, Gerald W. Boston, William S. Burton, Arter & Haden, Cleveland, Ohio, James B. Weidner, Royall, Koegel & Wells, New York City, F. Rush McKnight, Calfee, Halter, Calfee, Griswold & Sommer, Thomas E. O'Connor, Robert C. Maynard, Squire, Sanders & Dempsey, James E. Young, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendants-appellees.

Before EDWARDS and PECK, Circuit Judges, and FEIKENS,* District Judge.

EDWARDS, Circuit Judge.

Appellant Sexton appeals from the judgment of the United States District Court for the Northern District of Ohio, Eastern Division, denying his motion for a summary judgment and granting the summary judgment motion of the government. The effect of the judgment was to sustain his discharge from government employment.

Sexton had been an IRS agent for some ten years before his continuing commentary about the quality of his supervision resulted in his transfer (on grounds of incompatibility) from the Cleveland IRS office to that in Dayton. Sexton refused to go and was fired for refusing to report at the Dayton office. He then appealed to the Civil Service Commission and was restored to his job on procedural grounds, but was again ordered to report to Dayton. Again he refused and again he was fired. No back pay was paid him for the period between the first and the second discharge.

The District Judge who heard this case on affidavits and the lengthy administrative record provided an accurate summary of the factual details:

Plaintiff was originally separated from the Internal Revenue Service on November 4, 1966 for failing to report

* Honorable John Feikens, United States District Judge for the Eastern District of Michigan, Southern Division, sitting by designation.

for reassignment from Cleveland, Ohio to Dayton, Ohio. No change in plaintiff's rank or compensation was involved in the reassignment.

This reassignment, based on the Regional Commissioner's finding of an inability to conform to proper supervision in the Cleveland office, went through the available appeals procedures, and was confirmed upon administrative appeal.

Plaintiff then refused to report for duty to Dayton, and was thereafter separated for refusal to report as directed. Plaintiff then appealed his separation to the Civil Service Commission, Chicago Region, and finally to the Board of Appeals and Review, where his dismissal was reversed and he was ordered restored to the Internal Revenue Service rolls in Dayton, Ohio. The reversal was based on a finding that "the agency had unduly limited [plaintiff's] right of oral reply to the removal charge."

Plaintiff again failed to report for duty in Dayton, and on July 6, 1967, he was informed by the Regional Commissioner that, under 5 C.F.R. Part 752:

In order to promote the efficiency of the service, it is proposed to remove you from the Service or otherwise discipline you at any time after thirty (30) calendar days from the date you receive this letter.

This same letter informed plaintiff of the procedural rights available to him for review of this new adverse action, as well as the charges and supporting specifications.

Thereafter, plaintiff made several written replies, and on November 3, 1967, an oral reply. On December 14, 1967, plaintiff was notified that the Regional Commissioner found the charge and supporting specifications to be sustained and that in order to promote the efficiency of the service, he was to be removed on December 29, 1967. Plaintiff was also advised of his appeal rights, which he perfected

through the Civil Service Commission and Board of Appeals and Review. Both reviewing agencies upheld the Regional Commissioner's finding and found no error in the removal proceeding.

Appellant Sexton's first claim of substance is that his transfer to the Dayton IRS office was pure pretext employed for the purpose of effecting his discharge. He claims that IRS action was motivated by his criticism of his superior officers' "improper handling of tax cases" and asserts that his discharge violated his free speech rights and his right to petition for redress of grievances under the First Amendment.

The IRS's position on this issue is stated thus in the government's brief:

As justification for the Appellant's removal, Mr. Hunter stated that the record established that the Appellant was "feuding" with IRS District Officials as far back as 1959, that he had the reputation as a trouble-maker, and that his repeated accusations against his supervisors in Cleveland, both oral and written, clearly evidenced his inability or refusal to accept their supervision. Thereafter, the Regional Commissioner directed the Appellant to a new post of duty in an adjacent district in hopes that he could apply himself in a new environment. Mr. Hunter further stated that instead of viewing the reassignment as an opportunity, the Appellant added this to his list of "fancied" grievances. Therefore, when the Appellant refused to go to Dayton, as directed, the Regional Commissioner had no alternative but to remove him.

The other two issues which warrant comment are Sexton's claim that 46 documents were "missing" from his administrative file when it was presented before the Civil Service Commission and that he was improperly denied back pay for the time between the first discharge and the second.

As to appellant Sexton's claim that the transfer to Dayton was a pretext de-

signed to force him to quit, the District Judge found as follows:

> There is no evidence in the record that plaintiff was transferred in order to induce his resignation or in order to chill his First Amendment rights. In fact, the Board of Appeals and Review specifically found that:

>> The agency's decision to effect the reassignment was within its administrative prerogative and there is no evidence that the reassignment was arbitrary, capricious or unreasonable. Since there was no reduction in rank or compensation, there was no violation of adverse action procedures required by the Veteran's Preference Act. [5 U.S.C. § 7512].

> \*    \*    \*    \*    \*    \*

> The preponderance of the evidence does not indicate that appellant's reassignment was designed to "stifle valid criticism directed to the handling of tax liabilities." Instead, it indicates inability of appellant to get along with his supervisors because of an exaggerated idea of his own abilities.

In *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the Supreme Court stated, in regards to the statutory scheme for removing a competitive service employee:

> Where the focus of legislation was this [sic] strongly on the procedural mechanism for enforcing the substantive right which was simultaneously conferred, we decline to conclude that the substantive right may be viewed wholly apart from the procedure provided for its enforcement. The employee's statutorily defined right is not a guarantee against removal without cause in the abstract, but such a guarantee as enforced by the procedures which Congress has designated for the determination of cause. *Id.* at 152, [94 S.Ct. at 1643].

While this decision deals with removal of competitive service employees, the Court does not believe that the difference is of any consequence. What is important is the fact that the due process rights granted by Congress are virtually the same for both preference eligible employees and competitive service employees.

This Court must, therefore, conclude that: (1) plaintiff's transfer to Dayton, Ohio was not such an adverse action as contemplated in 5 U.S.C. § 7512(b)(3); (2) the record amply demonstrates that the reassignment was neither arbitrary, capricious nor unreasonable; and (3) all other procedural due process rights granted under the Veteran's Preference Act were given to plaintiff during the appeal of his removal from service.

■ We have read this record, including what appellant had to say about his superiors, and agree that appellant's due process rights as spelled out by statute were observed. Neither the District Court nor this court has the responsibility or the power to act as a super Civil Service Commission. This court has stated the principal subject of judicial review on discharge of a federal Civil Service employee as follows:

> The function of a reviewing court in cases involving the discharge of civil service employees is a limited one. *Powell v. Brannan*, 91 U.S.App.D.C. 16, 196 F.2d 871, 873. The judicial function is to determine whether there has been substantial compliance with applicable procedures and statutes, and not to review the administrative determination as to the wisdom or good judgment of the agency in exercising discretion. *Hargett v. Summerfield*, 100 U.S.App.D.C. 85, 243 F.2d 29, 32, cert. denied, 353 U.S. 970, 77 S.Ct. 1060, 1 L.Ed.2d 1137.
> *Baum v. Zuckert*, 342 F.2d 145, 147 (6th Cir. 1965).

■■ We note of course, that appellant relies upon the Veterans Preference Act[1]—specifically upon 5 U.S.C. § 7512(b) (1970). But we also note that

---

1. Act of June 27, 1944, ch. 287, 58 Stat. 387, codified as 5 U.S.C. §§ 7511, 7512, 7701 (1970).

the procedures required by this statute were carefully followed by the agency in the last discharge which is under review here.

Clearly a transfer of a government employee to another station without reduction of rank or pay is not per se "adverse action" within the meaning of the Veterans Preference Act. 5 U.S.C. § 7511(2) (1970). Even more clearly, discharge of such an employee for failure to report to work on such a reassignment is not "arbitrary and capricious" agency action. *Pauley v. United States,* 419 F.2d 1061 (7th Cir. 1969).

In this case Judge Hastings employed some reasoning which we believe is applicable here:

Far from being without any rational basis, we find the dismissal of plaintiff to be fully supported by the record. It is clear that if the reassignment was proper, the dismissal was proper. The Federal Personnel Manual, Ch. 715–9, Subch. 3–1, provides that "when any agency has found it necessary to assign an employee to a position in a different geographical or organizational location, and an employee refuses to accept the new assignment, his services may be terminated."

The transfer in this case was clearly proper. The Department of Agriculture after an extensive investigation of plaintiff's performance in Chicago concluded that he could not get along with the people working under him. It has been held, and it seems indisputable, that "strained personal relations" between an employee and his co-workers "would appear to provide a permissible basis for a transfer  *  *." *Kletschka v. Driver,* 2 Cir., 411 F.2d 436, 443 (1969).

We have reviewed the record sufficiently to conclude that the Civil Service Commission could have rationally found that this was the reason for the reassignment of plaintiff. Plaintiff's resulting dismissal was not the consequence of an arbitrary or capricious action. *Pauley v. United States, supra* at 1066–67.

■■■ This, however, does not finally dispose of plaintiff's principal argument on this appeal. For no matter how fair procedures may be on surface appearance, if in fact they are employed to conceal a purpose violative of the federal Constitution, there must be a remedy. *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 392, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Thus if plaintiff had made his case that his transfer was a mere pretext to suppress his First Amendment rights, he might still prevail. *See generally Motto v. General Services Administration,* 335 F.Supp. 694 (E.D.La.1971), aff'd, 502 F.2d 1165 (5th Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975).

In *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the plurality opinion, discussing a similar federal employee protection act,[2] said:

Since Congress when it enacted the Lloyd-LaFollette Act did so with the intention of conferring job protection rights on federal employees which they had not previously had, it obviously did not intend to authorize discharge under the Act's removal standard for speech which is constitutionally protected. The Act proscribes only that public speech which improperly damages and impairs the reputation and efficiency of the employing agency, and it thus imposes no greater controls on the behavior of federal employees than are necessary for the protection of the Government as an employer. Indeed the Act is not directed at speech as such, but at employee behavior, including speech, which is detrimental to the efficiency of the employing agency. We hold that the language "such cause as will promote the

2. The Lloyd-LaFollette Act, Act of August 24, 1912, ch. 389, § 6, 37 Stat. 555, codified as 5 U.S.C. § 7501 (1970).

efficiency of the service" in the Act excludes constitutionally protected speech, and that the statute is therefore not overbroad. *Colten v. Kentucky,* 407 U.S., 104 at 111, [92 S.Ct. 1953, 1957, 32 L.Ed.2d 584].

*Arnett v. Kennedy, supra* at 162, 94 S.Ct. at 1648.

On this aspect of the matter, however, we simply do not find proofs in the administrative record or in the District Court record which suggest reversal of the findings adverse to appellant entered in both forums.

The Board of Appeals and Review found that the criticisms indicated "inability of appellant to get along with his supervisors because of an exaggerated idea of his own abilities." As to this issue the District Judge found that the record amply demonstrates that the reassignment was neither "arbitrary, capricious nor unreasonable"; and we agree.

Appellant had an opportunity to present evidence on this issue at the Civil Service hearing and failed to convince the body designated by law to protect federal employees from unjust discharge. Before the District Court appellant joined in cross-motions for summary judgment under Rule 56, Federal Rules of Civil Procedure. He thus chose to rest his case upon the administrative record, plus exhibits. The written record presented to this court does not support any finding by us that the agency discharge was arbitrary and capricious or that the District Court's findings were clearly erroneous.

■ As to the other two issues which we believe merit comment, we can be much more brief. Appellant argued orally and by brief that his case had been materially prejudiced by the absence of some 46 "missing" documents. Our inspection of this record and of the documents themselves indicates that they were "missing" only in the sense that they were not included in appellant's administrative file. They clearly were before the District Court in its consideration of this case.

Further, we find nothing sinister in their omission from the administrative file. The "missing" documents appear to us to have had little, if anything, to do with the merits of plaintiff's claims. Whether to include them or not was clearly an administrative decision.

■ As to appellant's contention that in any event he should be paid back pay for the period between his first and second discharge, the applicable statute provides as follows:

(b) An employee of an agency who, on the basis of an administrative determination or a timely appeal, is found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee—

(1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect an amount equal to all or any part of the pay, allowances, or differentials, as applicable, that the employee normally would have earned during that period if the personnel action had not occurred, less any amounts earned by him through other employment during that period; and

(2) for all purposes, is deemed to have performed service for the agency during that period, except that the employee may not be credited, under this section, leave in an amount that would cause the amount of leave to his credit to exceed the maximum amount of the leave authorized for the employee by law or regulation. 5 U.S.C. § 5596(b) (1970).

The Civil Service Commission's reversal of the first discharge order was clearly upon procedural grounds, but it might well be held to represent a finding that the first discharge was "unwarranted."

The statute, however, also authorizes the Civil Service Commission to "pre-

scribe regulations to carry out this section." 5 U.S.C. § 5596(c) (1970). Under that authority the Civil Service Commission has adopted the following regulation:

(d) In computing the amount of back pay under this section and section 5596 of title 5, United States Code, the agency may not . . . (2) include any period during which the employee was unavailable for the performance of his job and his unavailability was not related to, or caused by, the unjustified or unwarranted personnel action. 5 C.F.R. § 550.804(d)(2) (1975).

Since we have already held that the IRS order transferring appellant to Dayton was within the agency's administrative discretion, appellant's failure to report must be held to be "unavailability . . . not related to, or caused by, the . . . unwarranted personnel action." Under this regulation appellant was not entitled to back pay.

The judgment of the District Court is affirmed.