**John COYNE, Plaintiff,**

v.

**Fred R. BOYETT, Regional Commissioner, United States Customs Service, New York, New York; and the United States Customs Service, Defendants.**

**No. 79 Civ. 2699.**

United States District Court,
S. D. New York.

May 21, 1980.

Jack B. Solerwitz, Mineola, N. Y., for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S. D. New York, New York City, for defendants; Katherine J. Trager, Asst. U. S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, John Coyne, a long-time employee of the United States Customs Service ("Customs Service"), commenced this action to review and declare void his transfer as a Supervisory Customs Inspector ("Inspector") from the Newark International Airport, Newark, New Jersey (the "Airport") to the Maersk Line Marine Terminal, Port Newark, New Jersey and for an order directing his reassignment to the Airport. The defendants, the Regional Commissioner of the Customs Service and the United States Customs Service, move for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion is based upon the record of all administrative proceedings.

In February 1977, Coyne, who was employed by the Customs Service as a Supervisory Customs Inspector at the Military Ocean Terminal in Bayonne, New Jersey, requested and was granted, a "lateral transfer" to a position at the Airport which became effective on March 6, 1977. On May 27, 1977 Coyne was transferred at the direction of Leonard Grant, the USCS Area Director for Newark, New Jersey, to a post at the Maersk Line Marine Terminal. In each of these posts Coyne retained his title of Supervisory Customs Inspector and the same civil service grade.

Grant's decision to reassign Coyne from the Airport to the Maersk Line Terminal—the reassignment which is the subject of Coyne's complaint in this action—had its roots in several, apparently abrasive, encounters between Coyne and officials or employees of TAP Airlines, an international carrier that had just begun flights into the Airport about the time of Coyne's arrival there. Complaints from TAP—echoed or supported by Port Authority and Newark Transportation Council representatives—directed at Coyne specifically and the Customs Service operation at the Airport in general culminated in a short-lived cancellation of TAP flights into the Airport. These events led Grant to determine that, while he did not question Coyne's overall abilities, he was not the right choice for the Airport position.

In June 1977, dissatisfied with the reassignment to the marine terminal, evidently regarding the Airport post as more prestigious and with better opportunities for advancement, Coyne filed an informal grievance with Grant requesting that he be returned to the Airport and that the record of the reassignment to the Maersk Line Marine Terminal be removed from his personnel file. Grant denied this request in a letter explaining that the reason for the reassignment was Coyne's inability to work smoothly with airline personnel and that it was not in Coyne's or the Customs Service's best interests to reassign him to the Airport. In July Coyne submitted a formal grievance to the defendant Boyett, the Regional Commissioner of the Customs Service, who referred the matter to an official grievance examiner. The Grievance Examiner conducted an inquiry which involved a review of the official grievance file, interviews of Coyne, Grant and Michael Contard, the Assistant Area Director for Newark, and the study of written statements by Newark Airport officials, a TAP airlines official, and Edward T. Coyne, the plaintiff's brother and a Customs Service employee.

In their interviews and written statements in the file, Contard and Grant stated that Coyne had not been able to deal tactfully with airlines personnel. Grant indicated that handling airline officials and Port Authority officials was a sensitive job and required cooperation with them. It was found that Coyne lacked the style and diplomacy required by the post and that he could not deal effectively with the special supervisory demands of the Airport. Joseph Vanacore, an official of the Port Au-

thority at the Airport confirmed that he had advised the Customs Service that there were problems with the customs operations at the Airport during Coyne's tenure and that since Coyne's transfer from the Airport matters had improved significantly. Coyne was given an opportunity to review these statements and to comment on them. Based upon his inquiry, the Grievance Examiner issued findings and recommended that the grievance be denied. Boyett reviewed the entire grievance file and accepted the examiner's recommendation on July 13, 1978.

Coyne appealed the reassignment to the Merit Systems Protection Board (the "Board")[1] on the ground that it constituted a "reduction in rank."[2] The Board found the action complained of not to be a reduction in rank and declined jurisdiction of the appeal in an opinion of February 23, 1979. Coyne then commenced this action against Boyett and the Customs Service seeking judicial review of his reassignment to the Maersk Line Terminal, alleging that the decision to reassign him was arbitrary and capricious and that the procedures followed by the Customs Service were improper and deprived him of due process.

The defendants in support of their motion for summary judgment preliminary contend that discretionary reassignments—all, they contend, that is involved in this case—are not subject to judicial review. To reach this question, however, it is first necessary to address Coyne's contention before the Board that the transfer he challenges constituted a reduction in rank. If it did, Coyne was entitled to the procedural safeguards provided for adverse actions,[3] to an appeal to the Board,[4] and to limited review in the courts.[5]

■ The administrative record reveals that the Customs Service regarded the two posts, at the Airport and at Maersk Line, as on the same competitive level and, moreover, that the reassignment was a remedial rather than a disciplinary measure. This evaluation was examined anew by the Board upon Coyne's appeal. Upon an analysis of pertinent factors the Board concluded that there were no significant differences between the knowledge, skills and abilities required to perform the duties of either position; that the two positions were properly placed on the same competitive level; and that no reduction in rank had taken place.

It further concluded that the change in assignments did not alter Coyne's position in the Customs Service hierarchy merely because it introduced an additional supervisory level above him.[6] The Court is of the

---

1. Coyne's appeal was actually addressed to the Federal Employee Appeals Authority of the United States Civil Service Commission. This body was reorganized into the Board as of January 1, 1979. The Board took charge of the adjudication of Coyne's appeal as of that date.

2. At the time of Coyne's appeal, a "reduction in rank" was an "adverse action" appealable to the U.S. Civil Service Commission. The Civil Service Reform Act of 1978, Pub.L. 95–454 (Oct. 13, 1978), eliminated reductions in rank from the category of appealable personnel actions. *Compare* 5 U.S.C. §§ 7511–12 (repealed by Pub.L. 95–454 (Oct. 13, 1978)) *with* 5 U.S.C. §§ 7511–14 (1980). *See also* 5 C.F.R. §§ 752.-202 et seq. (1979). This action, however, as the defendants concede, is governed by the terms of the prior enactment. *See* § 902 of the Civil Service Reform Act of 1978, Pub.L. 95–454 (Oct. 13, 1978).

3. *See* 5 U.S.C. §§ 7511–12 (repealed by Pub.L. 95–454 (Oct. 13, 1978)). *Cf.* 5 U.S.C. § 7511–14 (1980); 5 C.F.R. §§ 752.202 et seq. (1979).

4. *See* 5 U.S.C. § 7701, 80 Stat. 530 (amended 1978). *Cf.* 5 U.S.C. §§ 7513(d), 7701 (1980); 5 C.F.R. § 752.405 (1979).

5. *See, e. g., Doe v. Hampton,* 566 F.2d 265 (D.C.Cir. 1977); *Hurley v. United States,* 575 F.2d 792 (10th Cir. 1978); *McClelland v. Andrus,* 606 F.2d 1278 (D.C.Cir. 1979); *Grebosz v. United States Civil Service Commission,* 472 F.Supp. 1081 (S.D.N.Y.1979). *See generally* Johnson & Stoll, *Judicial Review of Federal Employee Dismissals and Other Adverse Actions,* 57 Corn.L.Rev. 178 (1972). *Cf.* 5 U.S.C. § 7703 (1980).

6. The lack of this "extra" layer of supervision at the Airport post was the product of a temporary, special situation there and was corrected by May 1978 after which time both positions were supervised by the same level of Customs Service officials.

opinion that these determinations are supported by more than substantial evidence.[7] In fact, Coyne has pointed to nothing in the record nor has the Court found any evidence other than Coyne's personal, subjective assessment of the prestige and career-opportunity differentials between the two jobs, to suggest there was any adverse differential between the posts.[8] Accordingly, the Court finds that Coyne's reassignment to the Maersk Line Terminal did not involve any reduction in rank.

We turn to the question whether a reassignment between equal positions is a personnel action for which judicial review is available. In support of their argument that it is not, the defendants' rely principally upon the opinion of the Second Circuit in *Kletschka v. Driver*[9] ("*Kletschka*"). This Court finds itself bound by the authority of the Court of Appeals' decision which involved facts virtually indistinguishable from this case. The plaintiff in *Kletschka*, a Veteran's Administration physician, sought review of his transfer from a hospital in New York to one in Texas, a transfer prompted by the plaintiff's strained personal relationships with the staff at the New York hospital. The Court of Appeals held that the decision to transfer the plaintiff was one committed to agency discretion and not subject to review by the courts under the terms of the Administrative Procedure Act.

Though no statute explicitly precluded review, the court assessed "the need for, and feasibility of, review on the one hand and the possible disruption of the administrative process" review might entail on the other. It concluded:

Obviously we cannot review the wisdom or good faith of this transfer without

subjecting all such personnel decisions to a similar review. Such a course would encourage a vast quantity of litigation and deprive the [agency] administrator of an element of flexibility which is necessary if he is to operate his department efficiently. Where the challenged personnel decision falls short of discharge we believe that, in general, the courts should seek to discourage arbitrary agency action by enforcing the various procedural rights of affected employees, and not by undertaking a full substantive review of the justification for the decision.[10]

This holding and reasoning of *Kletschka* have only recently been relied on in another case "four square" with this one. In *Bramley v. Webster*[11] an F.B.I. agent complained of his non-disciplinary transfer from a resident agency in Lansdale, Pennsylvania to the Bureau's Philadelphia headquarters and sought review under the Administrative Procedure Act. The district court held the transfer to be a decision committed to agency discretion and not reviewable.

The considerations which led the Second Circuit and the district court in *Bramley* to their holdings are no less persuasive here. Federal agencies are granted broad discretion with respect to the assignment of their employees.[12] The exercise of this discretion necessarily involves day-to-day but nonetheless complex managerial decisions that must take into account the requirements of the agency, the needs, talents and weaknesses, as well as other characteristics, of specific personnel, and, in some cases, the needs of an agency's "clientele"—the public it serves. An obvious need exists to preserve flexibility in these personnel decisions which may appear relatively routine but can have a significant impact on an agen-

---

7. *See Leefer v. Administrator*, N.A.S.A., 543 F.2d 209 (D.C.Cir. 1976).

8. *See Comberiate v. United States*, 203 Ct.Cl. 285, 289 (1973). Plaintiff does not, in fact, indicate in what fashion he believes the Board's conclusion to have been erroneous or improper. *See* Plaintiff's Memorandum in Opposition at 26.

9. 411 F.2d 436, 442–43 (2d Cir. 1969).

10. *Id.* at 443.

11. 476 F.Supp. 351 (E.D.Pa.1979).

12. *See* 5 C.F.R. § 335.102 (1979). *See also Leefer v. Administrator, N.A.S.A.*, 543 F.2d 209, 212–13 & n.33; *Craig v. Colburn*, 414 F.Supp. 185, 194 (D.Kan.1976), *aff'd*, 570 F.2d 916 (10th Cir. 1978).

cy's overall functioning. The courts also face difficulty in assessing the wisdom of such decisions which, as the Court of Appeals noted in *Kletschka*, are often "based on partly intuitive assessments of personal competence and the ability of one man to work in harmony with others."[13] Moreover, to subject such decisions to judicial review would place the tremendous burden on the agencies of relitigating complaints based upon them after the completion of both informal and formal internal grievance proceedings and would equally burden the courts. It would constitute the courts as an adjunct of the agency hearing process. These factors which counsel against review clearly outweigh the need to provide further judicial review of such decisions under the limited standard of review admittedly applicable[14] were any review proper.[15]

The authorities plaintiff urges in favor of review are not compelling. In only one instance has a court explicitly considered and upheld its power to review a simple reassignment. In *Craig v. Colburn*[16] the district court found it possessed authority under the Administrative Procedure Act to review the reassignment of a United States Marshal from a post in Kansas to one in Michigan. The sole basis for its conclusion,

however, was a finding that the pursuit of any administrative remedy by the plaintiff was "futile." Because the court felt it highly inequitable to hold on the one hand that exhaustion of administrative remedies was futile while at the same time denying judicial review, it exercised its powers to review the claim. In this case, not only was administrative review available but Coyne actively pursued and was afforded a lengthy, formal, impartial grievance procedure through which to assert his various contentions. The special circumstances that prevailed in *Craig*—assuming that decision was correct—do not exist here.

■  Plaintiff points out that the federal courts have on occasion considered the propriety of a reassignment under the standards for reviewing administrative decisions generally. These cases are not controlling here, however. In such cases the reassignments were not the personnel actions providing the basis for review; rather in each case an employee's refusal to accept reassignment triggered a more severe, adverse action and the courts considered the reassignment only as an adjunct to the propriety of these consequent personnel decisions.[17] Accordingly, Coyne's reassignment

---

13. *Kletschka v. Driver*, 411 F.2d 436, 443 (2d Cir. 1969).

14. Review would be limited to a determination that the action challenged is not arbitrary or capricious; accorded with relevant procedural requirements; and is not otherwise unconstitutional. *See Doe v. Hampton*, 566 F.2d 265, 271–72 (D.C.Cir. 1977); *Hurley v. United States*, 575 F.2d 792, 793 (10th Cir. 1978); *Grebosz v. United States Civil Service Commission*, 472 F.Supp. 1081, 1084 (S.D.N.Y.1979).

15. *See Doe v. Hampton*, 566 F.2d 265, 270 & n.11 (D.C.Cir. 1977).
A similar conclusion with respect to judicial review of the promotion or non-promotion of employees within a federal agency has long been the rule. *See Gnotta v. United States*, 415 F.2d 1271, 1276 (8th Cir. 1969), *cert. denied*, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970); *Crowley v. United States*, 208 Ct.Cl. 415, 527 F.2d 1176, 1184 (1975); *Lee v. Bolger* 454 F.Supp. 226, 231 (S.D.N.Y.1978); *Schwartz v. Federal Power Commission*, 423 F.Supp. 19, 20 n.3 (D.D.C.1976), *aff'd*, 578 F.2d 417 (D.C. Cir. 1978).

16. 414 F.Supp. 185 (D.Kan.1976), *aff'd*, 570 F.2d 916 (10th Cir. 1978).

17. *See McClelland v. Andrus*, 606 F.2d 1278 (D.C.Cir. 1979) (review of termination following refusal of transfer); *Roskos v. United States*, 213 Ct.Cl. 34, 549 F.2d 1386 (1977) (review of alleged forced retirement following reassignment); *Sexton v. Kennedy*, 523 F.2d 1311 (6th Cir. 1975), *cert. denied*, 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976) (review of termination following refusal of reassignment); *Comberiate v. United States*, 203 Ct.Cl. 285 (1973) (review of termination following refusal of transfer); *Pauley v. United States*, 419 F.2d 1061 (7th Cir. 1969) (review of termination following refusal of reassignment). *Cf. Leefer v. Administrator, N.A.S.A.*, 543 F.2d 209 (D.C.Cir. 1976) (reviewing transfer solely to determine if it constituted an adverse action); *Schwartz v. Federal Power Commission*, 423 F.Supp. 19 (D.D.C.1976), *aff'd* 578 F.2d 417 (D.C.Cir. 1978) (review "with great restraint" of denial of paid leave of absence); *Motto v. G.S.A.*, 335 F.Supp. 694 (E.D.La.1971), *aff'd*, 502 F.2d 1165 (5th Cir.

to the Maersk Line Terminal—which was not a reduction in rank—was the product of a decision committed to agency discretion and is not reviewable by this Court.

Coyne has also raised the claim that the procedure utilized by the Customs Service in effectuating his reassignment was not in keeping with Customs Service rules and regulations and thus violated his right to due process. This claim is without merit. It is based on the alleged failure of the Customs Service to "counsel" Coyne as to the requirements of his new assignment, a step purportedly required by Chapter 430, subd. 2–1(f) of the Customs Personnel Manual. Coyne relies on that part of the section providing "all employees assigned to a position either by appointment, reassignment, promotion or demotion, or when the employee's duties change significantly, will be fully informed of the requirements of their positions." It is clear, however, from the administrative record that the Customs Service did not consider the differences between the requirements of Coyne's marine terminal and airport duties to be "significant" enough to require counseling. This view is borne out by an analysis of the posts performed by the U.S. Civil Service Commission for the Board.

More significantly, reading the full text of subchapter 2–1, pertaining to performance requirements, it is eminently clear that the "counseling" Coyne claims he was entitled to is not part of any system of procedural protection provided by the Customs Service against improper reassignments. To the contrary, it is part of an informal, ongoing dialogue between employee and supervisor that in turn is part of a larger procedure used to develop performance requirements for specific positions in the Customs Service. Performance requirements, rather than safeguards of employee rights, are management "tools which will assist in the evaluation of employee performance." [18]

1974), cert. denied, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975) (transfer used to force resignation was an adverse action).

In accordance with the foregoing, the defendants' motion for summary judgment is granted.

So ordered.

18. United States Customs Service Personnel Manual, Chapter 430.2–1. *See Bramley v. Webster*, 476 F.Supp. 351, 353 (E.D.Pa.1979). *Cf. Doe v. Hampton*, 566 F.2d 265, 278–82 (D.C. Cir. 1977).