**Baltazar A. VILLARREAL, Plaintiff,**

v.

**The EQUAL EMPLOYMENT OPPORTUNITY COMMISSION OF the UNITED STATES, Eleanor Holmes Norton, Beverly A. Gary, Martin I. Slate, Whitney Walker, and Winfred E. Mansfield, Defendants.**

**No. 80–0992–CV–W–9.**

United States District Court, W.D. Missouri, W.D.

Aug. 9, 1984.

---

Irving Achtenberg, Kansas City, Mo., for plaintiff.

Judith M. Strong; Asst. U.S. Atty., Kansas City, Mo., Christopher G. Mackaronis, E.E.O.C., Washington, D.C., for defendants.

## ORDER

BARTLETT, District Judge.

Plaintiff, Baltazar A. Villarreal, a Compliance Manager with the Equal Employment Opportunity Commission of the United States of America (EEOC), alleges that his transfer from EEOC's Kansas City office to the St. Louis office was arbitrary and capricious, was not undertaken in compliance with relevant procedural protections, and was, therefore, in violation of his due process rights under the United States Constitution.

### Findings of Fact

Villarreal was first employed by the EEOC on August 22, 1966. He served in various capacities in the EEOC's Kansas City office. After January 29, 1979, when an agency-wide reorganization took place, the Kansas City office was under the jurisdiction of the St. Louis District Office. On May 14, 1979, he became Area Director in the Kansas City office.

On May 14, 1979, Winfred E. Mansfield assumed the position of Director of the St. Louis District Office. As District Director, Mansfield had ultimate responsibility for the agency's offices in St. Louis and Kansas City.

Mansfield spoke to the plaintiff at least two times per month about the situation in the Kansas City Area Office. On various occasions Mansfield discussed with plaintiff his concern about the substantial number of "backlog" cases in the Kansas City Area Office. ("Backlog" was a term used by the EEOC to identify all cases filed on or before January 29, 1979, the date of the agency's reorganization.)

On April 21, 1980, John Nicholson, Deputy Director of the St. Louis District Office, wrote a letter of reprimand to plaintiff criticizing plaintiff for his failure to manage properly the "backlog" cases.[1] Although Mansfield did not approve the letter before it was sent, Mansfield agreed that this problem existed in the Kansas City office.

One month later Nicholson evaluated plaintiff in a written Employee Appraisal. Nicholson rated plaintiff average or above average in all areas. Nicholson's summary evaluation of plaintiff was "Good promotion material. Ready to learn and perform more difficult tasks." In the narrative portion of the evaluation, Nicholson described Villarreal as "energetic and enthusiastic" but again criticized plaintiff for his failure to develop a systematic approach to solving the backlog problem.

After working with Villarreal for fifteen months, visiting with him at least twice a month, and making suggestions to Villarreal on how to resolve the problems in Kansas City, Mansfield concluded in early September, 1980, that the Kansas City office was not running as efficiently as it should. Mansfield thought that Villarreal was doing the best job he could with the Kansas City office. Nevertheless, the problems with the Kansas City office remained un-

---

1. Plaintiff filed a grievance through appropriate EEOC procedures in response to this letter of reprimand.

solved. Mansfield concluded that Villarreal's technical skills in the compliance area could be better utilized in the position of Compliance Manager in St. Louis. On the other hand, Joseph Doherty, who was then Compliance Manager in St. Louis, had managerial skills, which Mansfield thought could be used more effectively in Kansas City.

Accordingly, on September 30, 1980, Mansfield handed plaintiff a memorandum notifying plaintiff that he was being reassigned to the St. Louis office. The memorandum dated September 29, 1980, stated:

> After a careful review of the overall performance of the District Office over the past 15 months and my analysis of individual managerial strengths, I have decided that your individual skills and abilities can best be utilized here in the District Office.
>
> Therefore, effective November 1, 1980, you are being reassigned to the District Office in St. Louis, as a Compliance Manager, GS–14. This move will provide you with the necessary opportunity to become knowledgeable and proficient and gain experience with other functions growing out of the reorganization that do not exist in an area office setting, i.e. CIC, Systemic, Hearings, FIU, as well as direct participation with the Legal/Compliance interrelationship. Therefore, it is my conclusion that this move will be beneficial to you and to EEOC and, in particular, district operations.
>
> You should contact Dottie Lofink, Program Analyst, who will assist you with PCS papers, travel advance and other specifics related to this move.

Mansfield testified that he decided to transfer Villarreal to St. Louis for the reasons stated in this memorandum. Taking these reasons at face value, the transfer decision was a reasonable exercise of managerial discretion. Villarreal was not reassigned to St. Louis to discipline him or to force his resignation.

The EEOC would have paid plaintiff's moving expenses to St. Louis had plaintiff executed EEOC Form 103 which required Villarreal to agree "to remain in the service of the United States Government for twelve months following the date I report for duty at my new official station ... unless separated for reasons beyond my control and acceptable to the Equal Employment Opportunity Commission." Plaintiff refused to sign the form on advice of counsel because the transfer was being "appealed." *See* letter dated October 10, 1980, from Vache to Waller (EEOC).

Villarreal reported to the St. Louis District Office on November 4, 1980. As Area Director in Kansas City and as Compliance Manager in St. Louis, plaintiff was a GS–14, Step 7, with a salary of $45,433. Basically, the positions are at the same level in the EEOC and involve quite similar responsibilities. The EEOC Notification of Personnel Action characterized the personnel action as a "reassignment." The position title, pay plan, grade and step, and salary are identical for both positions. Both positions were with the "Equal Employment Opportunity Commission—Office of the Executive Director—Office of Field Services —St. Louis District Office." The only change in the description of plaintiff's position with the EEOC after the transfer was the work location. He was assigned to the "Compliance Unit" rather than the "Kansas City Area Office."

At the time of the transfer, Villarreal was in the process of grieving Nicholson's letter of reprimand. Villarreal knew that he could file a grievance about virtually any personnel action. However, he did not file a grievance over his reassignment to St. Louis. Furthermore, Villarreal did not challenge the transfer in any administrative proceeding.

Shortly after plaintiff reported to the St. Louis office, plaintiff filed the complaint in this case seeking declaratory and injunctive relief and money damages. Plaintiff then moved for a preliminary injunction to enjoin the reassignment. After a three-day evidentiary hearing, the Honorable Richard Ralston issued a comprehensive Report and Recommendation denying plaintiff's request for relief. The Magistrate's Report

and Recommendation was adopted without change by this Court.

*Discussion and Conclusions of Law*

*Judicial Review of Decision to Transfer Plaintiff Limited to Determining Whether Plaintiff Was Denied Statutory Procedural Protections*

█ This Court has no general supervisory power over the personnel actions of the executive branch. In *Keim v. United States,* 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774 (1900), the Supreme Court declined to review the action of the Secretary of Interior in discharging a clerk in the Post Office Department.

> It has been repeatedly adjudged that the courts have no general supervising power over the proceedings and action of the various administrative departments of government....
> The interference of the courts with the performance of the ordinary duties of the executive departments of the government would be productive of nothing but mischief; and we are quite satisfied that such a power was never intended to be given to them.
>
> .    .    .    .    .
>
> Unless, therefore, there be some specific provision to the contrary, the action of the Secretary of the Interior in removing the petitioner from office on account of inefficiency is beyond review , in the courts either by mandamus to reinstate him or by compelling payment of salary as though he had not been removed.

*Id.* at 293–294, 20 S.Ct. at 575.

Judicial reluctance to be drawn into supervising the employment practices of the executive branch is reflected in later decisions. In *Gnotta v. United States,* 415 F.2d 1271, 1276 (8th Cir.1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970), plaintiff sought judicial review of an adverse decision of the Board of Appeals and Review of the United States Civil Service Commission. Plaintiff contended that he had not been promoted because of his Italian ancestry.

The Court affirmed the District Court's dismissal of defendants, the United States, United States Civil Service Commission and the Department of the Army because the United States had not consented to the need for "positive relief directed to enhanced employment." *Id.* at 1277. The Court rejected the argument that the Administrative Procedure Act should be deemed to be an implied waiver of all governmental immunity. *Id.* After noting that the Administrative Procedure Act specifically exempts from judicial review agency actions "committed to agency discretion by law," the Court stated:

> Surely, promotion or nonpromotion of employees within a department is a matter of supervisory discretion and not ordinarily subject to judicial review.... It has been said that courts cannot undertake to pass on a plaintiff's qualifications for any given post or to compare them with those of an incumbent.... A claim that the plaintiff's supervisor entertained a dislike for him has not sufficed for judicial review.... And Professor Davis asks, 'Do we want courts inquiring into personnel management—salary increases, sick leave, office hours, allocation of parking spaces in the basement of the agency's building ...?'
>
> The integrity of these authorities and the soundness of the principles they espouse, would ordinarily incline a court to avoid interfering with administrative personnel decisions and to take a dim view of Gnotta's claims here....

*Gnotta,* 415 F.2d at 1276 (case citations omitted).

Although sharing the Eighth Circuit's reluctance to review the merits of discretionary employment decisions, several circuits have afforded limited judicial review to assure substantial compliance with statutory procedures. For instance, in *Baum v. Zuckert,* 342 F.2d 145 (6th Cir.1965), plaintiff asked the Court to review his discharge from the Air Force.

> The function of a reviewing court in cases involving the discharge of civil service employees is a limited one.... The judicial function is to determine whether there has been substantial compliance

with applicable procedures and statutes, and not to review the administrative determination as to the wisdom or good judgment of the agency in exercising discretion.... The courts will not examine into the merits of the dismissal....

*Id.* at 147.

In *Kletschka v. Driver,* 411 F.2d 436 (2d Cir.1969), plaintiff challenged the decision of the Veterans Administration transferring him without a hearing from Syracuse to Houston. Plaintiff asserted that his transfer was the final result of a conspiracy to deprive him of employment at the Syracuse Hospital and Medical School. Plaintiff accepted the transfer to Houston because he believed that he would be discharged if he did not. In two of the six counts of his complaint plaintiff relied upon the Administrative Procedure Act as authority for reviewing his contention that the transfer was illegal because he had not been afforded due process. The district court granted summary judgment in favor of defendants.

The Court of Appeals noted that persons suffering legal wrong because of agency personnel actions are entitled to judicial review under the Administrative Procedure Act (APA). However, "this right to review does not apply to agency action 'to the extent that ... [the] action is committed to agency discretion by law.'" *Id.* at 442. The Court held "that the propriety and wisdom of the V.A. decisions relating to plaintiff's transfer and research funds are committed to agency discretion, with the one exception noted below, and hence may not be subjected to general review in the courts." *Id.* at 442–43. The practical problems presented if courts were to attempt to review employment decisions confirm the discretionary nature of such decisions.

Obviously we cannot review the wisdom or good faith of this transfer without subjecting all such personnel decisions to a similar review. Such a course would encourage a vast quantity of litigation and deprive the V.A. administrator of an element of flexibility which is necessary if he is to operate his department efficiently. Where the challenged personnel decision falls short of discharge we believe that, in general, the courts should seek to discourage arbitrary agency action by enforcing the various procedural rights of affected employees, and not by undertaking a full substantive review of the justification for the decision.... The general refusal of the courts to review the merits of personnel decisions finds additional support in the difficulty of verifying or refuting the wisdom of judgments based on partly intuitive assessments of personal competence and the ability of one man to work in harmony with others.

*Id.* at 443 (citations omitted).

The Second Circuit believed that limited judicial review to determine compliance with statutorily mandated procedures did not involve intruding on agency discretion.

While we hold that the V.A. decisions challenged by plaintiff are not reviewable on the basis of the A.P.A. alone for abuse of discretion, we must still consider whether plaintiff can establish that the actions violated a specific statutory right. The enforcement of such a right by the courts may not entail the same practical objections to judicial review which we find persuasive in this case given the absence of any guidelines for the control of the V.A.'s discretion. Thus if plaintiff can point to the violation of a statutory right, which the courts may enforce, 'to that extent' the action of the V.A. is reviewable under the A.P.A., since the V.A. is without discretion to violate the right. 5 U.S.C.A. § 701(a)....

*Id.* at 444.

■ Here, the decision to transfer plaintiff to St. Louis was based on the exercise of managerial discretion. This Court is ill-equipped to review transfer decisions which are "based on complex considerations of agency requirements as well as the ability and personal characteristics of the employee." *Bullard v. Webster,* 623 F.2d 1042, 1047 (5th Cir.1980), cert. denied, 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). *See also Coyne v. Boyett,* 490 F.Supp. 292 (S.D.N.Y.1980); *Bramley v.*

*Webster*, 476 F.Supp. 351 (E.D.Pa.1979). Therefore, plaintiff is not entitled under the APA to judicial review of the propriety and wisdom of the EEOC's decision to transfer him from Kansas City to St. Louis.[2] Plaintiff cites no other statute authorizing judicial review of the merits of defendants' decision to transfer him to St. Louis.

■ However, plaintiff may be asserting that he is entitled to have the transfer decision reviewed on the merits because he contends that his constitutional right to due process was violated. In light of the administrative remedies available to plaintiff, some of which will be referred to later in this opinion, it is doubtful that there is or should be a "constitutional" cause of action against the EEOC as an employer. *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

Even if such an action exists, plaintiff must show that he had a cognizable property or liberty interest in not being reassigned. *Broadway v. Block*, 694 F.2d 979, 985 (5th Cir.1982) and *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). No basis exists in this record for concluding that the EEOC ever promised, expressly or impliedly, not to assign plaintiff to another position with the same grade and pay. Plaintiff did not have a legitimate claim of entitlement to being assigned by the EEOC to Kansas City.

Similarly, no basis exists for concluding that plaintiff's transfer impinged on any constitutional liberty interest. The EEOC did not make any charge against plaintiff that might seriously damage his standing and associations in the community. *Broadway*, 694 F.2d at 985.

Therefore, even if a constitutional cause of action lies against the United States as an employer, plaintiff has failed to establish that he had a property interest in assignment to Kansas City or that a liberty interest was affected by his transfer. No constitutional basis exists for reviewing the transfer on its merits.

### Plaintiff's Transfer to St. Louis Did Not Violate Statutory Procedural Problems

Although the decision to transfer plaintiff to St. Louis will not be reviewed on its merits, consideration will be given to plaintiff's argument that the transfer violated specific statutory rights.

### The Civil Service Reform Act

The Civil Service Reform Act of 1978 (CSRA) is the principal statute governing federal civil service practices. The CSRA expressly provides for judicial review of certain personnel decisions. In 5 U.S.C. § 7703 Congress provided that "[a]ny employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board (MSPB) may obtain judicial review of the order or decision." Judicial review is provided by a Circuit Court of Appeals or the Court of Claims.

Only certain employment actions can be taken to the MSPB. These actions include removals, suspensions for more than fourteen days, reductions in pay or grade, and furloughs of thirty days or less. 5 U.S.C. §§ 7512, 7513(d) and 4303(e). Reassignments with grade and pay retention are not included among the actions subject to review by the MSPB and on appeal by the federal judiciary. *Broadway*, 694 F.2d at 982.

■ Plaintiff argues that the decision to transfer him was really an attempt to force

---

**2.** In *Craig v. Colburn*, 414 F.Supp. 185 (D.Kan. 1976), *aff'd* 570 F.2d 916 (10th Cir.1978), the Court reviewed a reassignment on the merits under the APA. The Court's willingness to do so resulted from its conclusion that the pursuit of any administrative remedy by the plaintiff was "futile." 414 F.Supp. at 193.

Here, plaintiff has not demonstrated that pursuit of administrative remedies would have been futile. For example, plaintiff had available to him, but did not pursue, an administrative grievance procedure. Plaintiff was familiar with this grievance procedure because he had previously grieved the letter of reprimand from Nicholson.

Likewise, even though plaintiff alleges that his transfer was a "prohibited personnel practice" under 5 U.S.C. §§ 2301–05, he did not seek review by the Special Counsel of the Merit System Review Board.

his resignation and thereby avoid the procedural protections afforded by § 7513 to employees who are removed. Plaintiff relies on *Motto v. General Services Adm.*, 335 F.Supp. 694 (E.D.La.1971), aff'd, 502 F.2d 1165 (5th Cir.1974), cert. denied, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975), and *McClelland v. Andrus*, 606 F.2d 1278 (D.C.Cir.1979).

In *Motto*, the Court concluded that plaintiff's supervisor decided to get rid of Motto because he was an undesirable employee. The supervisor knew that Motto had previously refused to transfer from New Orleans. The supervisor conferred with personnel officers on how best to achieve his goal in getting rid of Motto in a manner which would leave him with no appeal. A decision was made to order Motto to move to Ft. Worth for alleged operational reasons. In fact, Motto's services were needed in New Orleans, not in Ft. Worth, at the time the transfer was ordered. "As expected, Motto decided he would not accept the transfer. He was informed that he could instead resign, and he did." *Id.* 335 F.Supp. at 696.

Based on these factual findings, the Court concluded:

> This is not a case where a genuine operational need of an agency required the agency to give an employee a job that he considered inherently unpleasant.
>
> . . . . .
>
> A discretional decision by an administrative official authorized to make the decision should not be overturned by the courts unless that decision was arbitrary or capricious.... And an employee may be given a fair choice between facing charges or resigning.... But if it is shown that a decision was made to rid the government of an employee without complying with the statute, the action may not be camouflaged as a discretionary decision to relocate the place where a function is performed. Transfer, like other government action affecting an employee's status, may not be based on 'an

arbitrary decision to achieve a predetermined result.'

*Id.* at 696–97.

In the instant case, plaintiff has failed to demonstrate that the defendants were trying to accomplish his removal indirectly by transferring him to St. Louis. Therefore, even if this Court adopted the reasoning in *Motto*, the facts of this case are starkly different.

In *McClelland v. Andrus*, 606 F.2d 1278 (D.C.Cir.1979), McClelland, an employee of the park service, refused to accept a transfer from Glacier National Park to Omaha, Nebraska, and was removed. McClelland appealed his discharge to the Civil Service Commission. The Federal Appeals Authority concluded in part that the vacancy in Omaha was merely a pretext the park superintendent used to enable him to rid himself of appellant. The Department of Interior appealed to the Civil Service Commission's Appeals Review Board which reversed on the basis that there was a rational basis for the Omaha transfer. *Id.* at 1284. After the district court affirmed, the Court of Appeals remanded the case for further evidentiary hearing. The commission was advised to investigate the possibility that the transfer was "a sham—a way of achieving a predetermined result." *Id.* at 1291.

Plaintiff here has failed to establish that the EEOC transferred him to St. Louis as a "sham" to achieve a predetermined result such as his removal. On the contrary, defendants thought Villarreal was a valuable employee with abilities needed in the St. Louis office.

Furthermore, in both *Motto* and *McClelland* the transfer order resulted in a more severe personnel action—Motto resigned and McClelland was terminated. Therefore, as stated in *Coyne*, 490 F.Supp. at 296, the focus of judicial review was the more severe personnel action caused by the transfer decision.

> In such cases the reassignments were not personnel actions providing the basis for review; rather in each case an employee's refusal to accept reassignment

triggered a more severe, adverse action and the Courts considered the reassignment only as an adjunct to the propriety of these consequent personnel decisions.

Here, Villarreal's transfer to St. Louis did not trigger a more severe personnel action. Villarreal reported for work in St. Louis and has been working there ever since.

Plaintiff argues that he should not be required to resign or risk removal to qualify for the procedural protections set forth in § 7513. For this Court to adopt plaintiff's reasoning would amount to adding "reassignment" to the list of personnel actions in § 7512 to which the procedural protections in § 7513 apply. This Court will not accept plaintiff's invitation to legislate.

■ Even though defendants were not obligated to follow the procedures in § 7513 before transferring plaintiff, a "transfer or reassignment" is a "personnel action" for the purposes of 5 U.S.C. § 2302. A transfer or reassignment in violation of § 2302(b) is a "prohibited personnel practice." The Special Counsel of the Merit System Protection Board is required to investigate any allegation of prohibited personnel practices and may request the Merit System Protection Board to consider an order of corrective action on the matter. 5 U.S.C. § 1206(a)–(c). The Special Counsel is also required to investigate any allegation concerning "activities prohibited by any civil service law, rule, or regulation. . . ." *Id.* at § 1206(e)(1)(D).

Plaintiff argues that one of the merit system principles applicable to federal personnel management is that "employees should be ... protected against arbitrary action. . . ." 5 U.S.C. § 2301(b)(8). Plaintiff asserts that it is a prohibited personnel practice under § 2302(b) to recommend or approve a reassignment unless it is based on "an evaluation of the work performance, ability, aptitude, or general qualifications of such individual. . . ." 5 U.S.C. § 2302(b)(2)(A).

Initially, plaintiff's argument is based on an inaccurate reading of § 2302(b)(2)(A).

Quoted in its entirety as applicable to this argument § 2302(b)(2)(A) reads as follows:

> Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—
>
> .    .    .    .    .
>
> (2) solicit or consider any recommendation or statement, oral or written, with respect to any individual who requests or is under consideration for any personnel action unless such recommendation or statement is based on the personal knowledge or records of the person furnishing it and consists of—
>
> (A) an evaluation of the work performance, ability, aptitude or general qualifications of such individual. . . .

The evidence in this case does not indicate that Mansfield solicited or considered information from others about reassigning plaintiff. Mansfield's decision to reassign plaintiff was based on his personal knowledge of Villarreal and his assessment about what was best for the operation of his office.

However, even if plaintiff's assertion is correct that the decision to reassign plaintiff was based on a prohibited personnel practice as defined in § 2302(b)(2)(A), plaintiff chose not to pursue this administrative remedy. No effort was made to take this matter to the special counsel of the Merit System Protection Board.

Furthermore, there is no statutory provision for judicial oversight of the special counsel's efforts although there is some authority for judicial review of an order by the Merit System Protection Board in response to a request for corrective action by the special counsel. *Broadway*, 694 F.2d at 982 n. 4. Correction of prohibited personnel activities is limited to the investigative and corrective powers granted to the special counsel under 5 U.S.C. § 1206. *Borrell v. United States International Communications Agency*, 682 F.2d 981, 988 (D.C.Cir.1982).

Therefore, plaintiff was not denied any procedural protection he was entitled to under 5 U.S.C. § 2302.

■ Plaintiff also asserts that by reassigning him without first making an appraisal of his performance and without providing him an opportunity to demonstrate acceptable performance the EEOC denied him procedural rights guaranteed by 5 U.S.C. §§ 4301–05.[3]

Section 4302(a) requires each agency to develop "performance appraisal systems" and to use "the results of performance appraisals as a basis for . . . reassigning . . . employees." Section 4302(b) provides in part as follows:

Under regulations which the Office of Personnel Management shall prescribe, each performance appraisal system shall provide for—

.    .    .    .    .

(2) as soon as practicable, but not later than October 1, 1981, with respect to initial appraisal periods, and thereafter at the beginning of each following appraisal period, communicating to each employee the performance standards and the critical elements of the employee's position;

.    .    .    .    .

(6) reassigning . . . employees who continue to have unacceptable performance but only after an opportunity to demonstrate acceptable performance.

Plaintiff concedes that no performance appraisal had been implemented by the EEOC at the time of his reassignment on November 2, 1980, and that none was required until October 1, 1981. Therefore, even if it is assumed that plaintiff was reassigned without being afforded an opportunity to demonstrate acceptable performance (which assumption is contradicted by the evidence in this case), plaintiff was not denied any procedural right afforded

by §§ 4301–05 because they were not yet applicable to the EEOC.

*Plaintiff Was Lawfully Required to Agree to Remain in Government Service for One Year After Transfer in Order to Qualify for Reimbursement of Moving Expenses*

■ Finally, plaintiff asserts that his due process rights have been denied by defendant's insistence that plaintiff agree to stay in the employ of the government for one year as a condition to the payment of his travel expenses to St. Louis. Plaintiff asserts that this requirement imposes an unreasonable financial burden on him that was not previously a condition of his employment.

As discussed previously in another context, plaintiff can prevail on his denial of due process claim only if he has been deprived of a property interest established either by contract or applicable law. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Here, plaintiff does not assert that he had a contractual right to have his travel expenses paid. Whatever "right" plaintiff had to be paid his travel expenses when transferred is established by 5 U.S.C. § 5724(a) (1980).

Under such regulations as the President may prescribe and when the head of the agency concerned or his designee authorizes or approves, the agency shall pay from Government funds—

(1) the travel expenses of an employee transferred in the interest of the Government from one official station or agency to another for permanent duty, and the transportation expenses of his immediate family, or a commutation thereof under section 5704 of this title; and

(2) the expenses of transporting, packing, crating, temporarily storing, draying, and unpacking his household goods

---

**3.** During closing argument plaintiff's counsel modified plaintiff's contention by asserting that plaintiff was entitled to certain interim performance appraisal procedures under EEOC Order 542 in effect at the time of plaintiff's reassignment to St. Louis. However, Order 542 is not in evidence. When the defendant attempted to offer EEOC Order 542, plaintiff objected on the ground that it contained extrinsic material. Therefore, the Court is unable to assess whether this argument has any merit.

and personal effects not in excess of 11,000 pounds of net weight.

Section 5724(i) (1980) provides as follows:

An agency may pay travel and transportation expenses (including storage of household goods and personal effects) and other relocation allowances under this section and sections 5724(a) and 5726(c) of this title when an employee is transferred within the continental United States only after the employee agrees in writing to remain in the Government service for 12 months after his transfer, unless separated for reasons beyond his control that are acceptable to the agency concerned. If the employee violates the agreement, the money spent by the United States for the expenses and allowances is recoverable from the employee as a debt due the United States.

Therefore, the same statute which establishes plaintiff's "right" to payment of travel expenses imposes the condition of which he now complains. No showing has been made that it is unreasonable to require a commitment to remain in government service for one year as a condition to payment of travel expenses. Plaintiff has failed to demonstrate that transferred government employees have an absolute "right" to payment of travel expenses.

### Motion to Reopen Evidence

■ Plaintiff has moved to reopen the case for submission of additional evidence. Plaintiff asserts that he has learned recently that District Director Mansfield borrowed money from various EEOC employees, including Doherty. Plaintiff asserts that this evidence "bears heavily upon both the issue whether pretextual reasons were given to plaintiff, thereby depriving him of procedural due process, and upon the credibility of defendant Mansfield's testimony concerning these matters."

Apparently plaintiff is suggesting that the "new" evidence would establish that Mansfield transferred Doherty to Kansas City and Villarreal to St. Louis because Mansfield owed Doherty money and wanted to do him a favor. To reopen the record to receive this evidence would involve this Court in determining what reason or combination of reasons actually motivated Mansfield. If an improper reason was included with proper reasons, the Court would have to determine whether the transfer would have occurred despite the improper reason. Almost inevitably the Court would be drawn into determining whether managerial discretion was exercised wisely. As previously explained, this Court does not have authority to do so.

If the new evidence would establish that Villarreal was transferred for the reason plaintiff suggests by the tender of the new evidence, plaintiff has a specific remedy. Under 5 U.S.C. § 2302(b), it is a prohibited personnel practice for:

Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

.      .      .      .      .

(6) grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;

.      .      .      .      .

Any allegation of a prohibited personnel practice should be presented to the Special Counsel of the MSPB. The Special Counsel is required to investigate the allegation and may request the MSPB to order corrective action. 5 U.S.C. § 1206(a)–(c) and *Broadway*, 694 F.2d at 982.

Therefore, plaintiff's motion to reopen the record and take additional evidence is denied.

### Order

For the reasons stated above, judgment is hereby granted in favor of the defendants, Equal Employment Opportunity Commission, Eleanor Holmes Norton, Beverly A. Gary, Martin I. Slate, Whitney Walker and Winfred E. Mansfield, and against plaintiff, Baltazar A. Villarreal. The costs

of this action are assessed against the plaintiff.

IT IS SO ORDERED.